**In re MARILL ALARM SYSTEMS, INC. and Marill Security Services, Inc., Debtors.**

**MARILL SECURITY SERVICES, INC., a Florida corporation; Marill Alarm Systems, Inc., a Florida corporation, Eddy Marill and Mirtha Marill, Plaintiffs,**

**v.**

**OPEN DOOR CAPITAL CORPORATION a New York corporation, Equity Funding Corporation, a New York corporation, Theodore Moss, Richard C. Stein and Donald Braverman, Defendants.**

**Bankruptcy Nos. 85–02033–BKC–SMW, 85–02034–BKC–SMW.**

**Adv. No. 86–0072–BKC–SMW–A.**

United States Bankruptcy Court, S.D. Florida.

Dec. 30, 1986.

Chad P. Pugatch, Cooper, Shahady, Frazier & Pugatch, Fort Lauderdale, Fla., for plaintiffs.

Steven Karlin, Platzer & Fineberg, New York City, for defendants Equity Funding Corp., Theodore Moss and Donald Braverman.

Joseph Bernstein, Bernstein, Bernstein & Stein, Fort Lauderdale, Fla., for defendants Open Door Capital Corp. and Richard C. Stein.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

SIDNEY M. WEAVER, Bankruptcy Judge.

This cause came on for trial on November 3, 1986 and November 6, 1986, upon a Complaint filed by Marill Security Services, Inc., a Florida corporation (hereinafter "Marill Security"), Marill Alarm Systems, Inc., a Florida corporation (hereinafter "Marill Alarm"), and Eddy Marill and Mir-tha Marill (hereinafter "Marills"), all Debtors-In-Possession in related cases pending before this Court against Defendants, Equity Funding Corporation, a New York corporation (hereinafter "Equity Funding"), Theodore Moss (hereinafter "Moss") and Donald Braverman (hereinafter "Braverman") seeking treble damages pursuant to the Florida Racketeer and Corrupt Organization Act (Florida RICO Act), *Fla.Stat.* 895.01 *et seq.*, as well as damages pursuant to 11 *U.S.C.* § 548 and *Fla.Stat.* § 726.01 as made applicable by 11 *U.S.C.* § 544(b). The causes of action set forth in said Complaint relating to the other Defendants, Open Door Capital Corporation and Richard C. Stein were settled prior to trial and were not heard by the Court.

The Court, having heard the testimony and examined the evidence presented; observed the candor and demeanor of the witnesses; considered the arguments of counsel and being otherwise fully advised in the premises, does hereby make the following findings of fact and conclusions of law:

In early 1982, the Plaintiff, Marill Security, was a small company engaged in the business of providing security guard services. The Company, which was and is operated by the Plaintiffs, Marills, had few employees and a limited budget. From shortly after the inception of the business, the Defendant, Braverman, acted as the Plaintiffs' Accountant and Financial Advisor. As the business grew, the Defendant, Braverman, increased the amount of work he was performing for the Company.

Due to needs created by the expansion of the business, the Plaintiffs began experiencing cash flow problems and were in need of additional working capital as well as funds to bring current their payroll taxes. Defendant, Braverman, being aware of these problems, arranged secured financing for the Plaintiffs with a company known as Open Door Capital Corporation, owned by Richard C. Stein, who was an attorney for and acquaintance of the Defendant, Moss. This financing was arranged for the Plaintiffs by the Defendant,

Braverman, working in conjunction with the Defendant, MOSS.

The initial loan was closed on or about July 1, 1982, and it was at this same time that the Defendants, MOSS and Braverman began implementing a scheme to defraud the Plaintiffs. The Defendant, Braverman, created, on the same date that the initial loan with Open Door Capital Corporation was closed, a corporation known as Equity Funding Corporation, the other Defendant herein.

The initial loan and all subsequent loans made by Open Door Capital Corporation to the Plaintiffs bore interest at the rate of eighteen (18%) percent per annum. The Defendants, Moss and BRAVERMAN, leading the Plaintiffs to believe that Open Door Capital Corporation was Defendant MOSS's corporation, charged what purported to be additional interest on the Open Door Capital Corporation loans, said payments to be collected through Defendant, Equity Funding.

Over a period of years, a pattern emerged whereby the amount collected by and paid through Equity Funding increased each time additional funds were loaned by Open Door Capital Corporation. These funds were all charged and collected as instructed by the Defendant, Braverman, and were submitted to him or to Defendant, Moss, by the Plaintiffs. The effect of these payments, which were normally rendered on similar dates and in similar amounts to the payments made to Open Door Capital Corporation, was to render those loans, assuming all payments were made pursuant to said loans, usurious in accordance with the provisions of Chapter 687 of the Florida Statutes. Thus, the Court finds that, construing said payments to Defendant, Equity Funding, as being additional loan payments under the Open Door Capital Corporation loans, interest rates reached as high as 74 percent and 95 percent when figured on an annual basis. These payments are far in excess of the 45 percent limitation provided under *Fla.Stat.* 687.071 which states:

"(3) Unless otherwise specifically allowed by law, any person making an extension of credit to any person, who shall willfully and knowingly charge, take or receive interest thereon at a rate exceeding forty-five percent per annum or the equivalent rate for a longer or shorter period of time, whether directly or indirectly or conspire so to do, shall be guilty of a felony of the third degree."

■ Defendants respond by asserting that these payments to the Defendant, Equity Finding were, in fact, consulting fees and not additional charges under the loans. The Court does not believe the Defendants' version of the facts and finds it unsupported by the evidence and the circumstances of this case. When viewing the contradictory testimony of Plaintiffs' witnesses and the Defendants' witnesses, the Court finds the testimony of the Plaintiffs to be credible and believable, especially in view of the support provided by the circumstantial evidence in this case. The payment history as presented at trial, as to both Open Door and Equity Funding, reflect a tie-in as to amounts and dates of payments which must be more than coincidental. Equity Funding, with its purported consulting arrangement, was incorporated on the very same date that the first loan was made by Open Door Capital Corporation. The testimony of Defendant Braverman as to the monetary consideration for the purported consulting arrangement was contradictory as to the actual payments and the document contended to be a written agreement. There was no comprehensive billing arrangement, engagement letter or other documentation reflecting the basis for the purported consulting arrangement. There was no satisfactory explanation of services provided to earn the amount of fees claimed other than services which the Court finds would come within the purview of usual and normal accounting services. Defendant Braverman himself acknowledged that the fees for placing financing were not to exceed five (5%) percent of the total amount of dollars placed which would not have entitled him to a fee exceeding approximately $8,000.00. The

Defendant MOSS knew nothing about the operation of Equity Funding, it's records, or it's relationship with the Plaintiffs in any detail and provided no satisfactory explanation as to the nature of the services allegedly provided to the Plaintiffs. The Defendant MOSS denied receiving any payments from the Plaintiffs although the testimony of Plaintiffs and Federal Express receipts placed into evidence show the contrary. In general, the testimony of Defendants was not credible and believable in view of the overall circumstances of this case.

The Court thus finds the monies collected by the Defendants to be additional interest charges, represented as being pursuant to the Open Door Capital Corporation loans, although apparently Open Door Capital Corporation had no knowledge of the additional amounts being collected by the Defendants, Moss and Braverman, through the Defendant, Equity Funding. The Court finds that these payments may be treated as usurious collections pursuant to the aforesaid Florida Statute. When dealing with such transactions, the Court is charged with looking at the substance rather than the technicalities to determine if in reality the transaction should be treated as usurious under Florida law. *Growth Leasing Ltd. v. Gulfview Advertiser, Inc.*, 448 So.2d 1224 (2nd D.C.A. Fla.1984).

■ Further, the Court finds that if this matter does not technically come within the purview of the criminal usury laws of the State of Florida, it is clearly a fraudulent practice which is violative of *Fla.Stat.* § 817.035(1) which provides:

"(1) Any person who engages in a scheme constituting a systematic, ongoing course of conduct with intent to defraud more than one person, or to obtain property from more than one person by false or fraudulent pretenses, representations, or promises, and who so obtains property from one or more such persons is guilty of a misdemeanor of the first degree, punishable as provided in § 775.-082, § 775.083, or § 775.084."

■ Either of these violations, whether treated under Chapter 687 or Chapter 817 of the Florida Statutes will give rise, independently, to a civil action for treble damages, punitive damages and attorney's fees under the Florida RICO Statute as set forth in *Fla.Stat.* § 895.01, *et seq.*

■ The Plaintiffs have met their burden of proof in establishing the pattern of activities engaged in by the Defendants herein to constitute a violation of the Florida RICO Statute. The actions of Defendants in defrauding Plaintiffs and/or charging and collecting what purports to be usurious interest constitute a sufficient pattern of racketeering activity as contemplated by *Fla.Stat.* § 895.02. The Defendants qualify as an enterprise also within the meaning of that Statute.

The Court having determined that the actions of Defendants clearly violate the provisions of Chapter 895.01, *et seq.*, the Plaintiffs herein have a civil remedy pursuant to *Fla.Stat.* § 895.05(7) which mandates an award of treble damages and, where appropriate, punitive damages. The Plaintiffs are also entitled to recovery of attorney's fees and costs. *See, Banderas v. Banco Central del Ecuador*, 461 So.2d 265, (3rd D.C.A. Fla.1985).

The Plaintiffs here have sustained damages as proven at trial in the amount of $86,833.48, and are thus entitled to an award of treble damages in the total amount of $260,500.44. The Court finds that the treble damages awarded herein constitute a sufficient punitive deterrent to Defendants and declines to award further punitive damages herein. The Court will also reserve jurisdiction for purposes of making a determination as to attorney's fees and court costs to be considered in a separate hearing upon appropriate notice.

Inasmuch as the treble damage award herein encompasses all damages sustained by Plaintiffs, the Court finds it unnecessary to reach the issues alleged under 11 *U.S.C.* § 548 and *Fla.Stat.* § 726.01 as made applicable by 11 *U.S.C.* § 544(b) and finds these issues to be moot in view of the ruling announced herein.

The Court will enter a separate Final Judgment in accordance with these Findings of Fact and Conclusions of Law.