In re Jack Frederick NELL, Debtor.

Kenneth A. RUSHTON,
Trustee, Appellant,

v.

Arthur TRAUB and Joan
Traub, Appellees.

Bankruptcy No. 85A–00808.
Adv. No. 86PA–0104.

United States District Court,
D. Utah, C.D.

Feb. 23, 1987.

Randy S. Ludlow, Salt Lake City, Utah, for appellant.

Patricia A. O'Rorke, Salt Lake City, Utah, for appellees.

## MEMORANDUM OPINION AND ORDER

JENKINS, Chief Judge.

This is an appeal of the bankruptcy court's order granting summary judgment against the bankruptcy trustee. Because this court holds that the bankruptcy court lacked jurisdiction to enter a final order, the case is remanded for further proceedings.

The appellees in this action, Arthur and Joan Traub, entered into a management contract concerning a truck/tractor they owned with Truck Investment Enterprises (TIE). TIE was to maintain and administer the Traub's truck business. The management agreement was executed in November 1980 and the truck was placed in service in January 1981. This suit is to recover payments alleged due from the Traubs under that contract.

The venture between the Traubs and TIE did not fare well. According to the Traubs, TIE failed to perform any management services and failed to make payments due the Traubs. TIE checks bounced and, the Traubs claim, its principals failed to respond to several inquiries. On June 1, 1981, TIE transferred its interest in the management contract to General Transportation Management (GTM), without notifying the Traubs. Subsequently, the Traubs insisted upon a release from TIE before authorizing the transfer of the contract to GTM. According to Joan Traub, this was agreed to by Marvin Friedland, secretary, treasurer and director of TIE. Affidavit of Joan Traub, Record on Appeal 29, 30.

TIE never made any demands on the Traubs for payment of the accounts alleged due. On the contrary, the Traubs repeatedly attempted to contact TIE, its principals and attorneys to demand an accounting and refund of any sums due them. The TIE attorney informed the Traubs that they had no claim against TIE or its principals. *Id.* at 32.

At some time, the pleadings do not reveal when, TIE assigned the accounts alleged due from the Traubs to Nell, the debtor in the proceedings below. Sometime after that, on March 14, 1985, Nell filed bankruptcy. On January 27, 1986, the trustee in that bankruptcy filed this suit to recover on the alleged accounts. The Traubs moved for dismissal on the basis of Federal

Rules of Civil Procedure 12(b)(6) and 11.[1] The bankruptcy court, treating the motion as one for summary judgment, entered an order dismissing the complaint with prejudice and granting judgment "against plaintiff and in favor of defendants pursuant to Rule 56, Federal Rules of Civil Procedure." Record on Appeal at 109.

An initial question, which the parties have not raised is whether the bankruptcy court had jurisdiction to enter this final order. Congress redefined the bankruptcy courts' jurisdiction in the Bankruptcy Amendments and Federal Judgeship Act of 1984. Understanding the intent of Congress in enacting those amendments begins with the plurality opinion in *Northern Pipeline Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). *See infra,* note 3.

The *Marathon* plurality spoke to the institutional concerns of separation of powers. It established that there is a limit on how much article III power can be ceded to legislative tribunals and non-tenured judges. The plurality opined that the 1978 bankruptcy act, by allowing non-article III bankruptcy courts to enter final judgments in matters outside the core of the federal bankruptcy power, impermissibly encroached on the article III judicial power.

The changes that Congress made in response to *Marathon* are basically twofold. First, Congress changed the jurisdictional section to make clear that bankruptcy jurisdiction was granted only to the district courts. 28 U.S.C. § 1334 (Supp. III 1985). Any proceeding before the bankruptcy court must be referred to that court by the district court. *Id.* § 157. Second, and for present purposes most importantly, the Congress divided bankruptcy jurisdiction into "core" and "non-core" proceedings. *Id.* In core proceedings, the bankruptcy court may enter final orders and judgments. In non-core proceedings, bankruptcy courts, absent consent of all the parties, may enter only proposed findings and conclusions for the district court's de novo review. *Id.* These two changes require separate analysis.

The first change, that of eliminating the jurisdictional grant to the bankruptcy courts, is one more of form than of substance. Under the 1978 Act, bankruptcy jurisdiction was granted to the district courts, 28 U.S.C. § 1471(a) (1982), but the Act also provided that bankruptcy courts "shall exercise all of the [bankruptcy] jurisdiction conferred ... on the district courts." *Id.* § 1471(c). Instead of mandating the exercise of bankruptcy jurisdiction by the bankruptcy courts, the amendments now provide only that the district court may refer bankruptcy matters to the bankruptcy judges of the district. 28 U.S.C. § 157(a) (1982 & Supp. III 1985).[2] This district has followed Congress's suggestion and provided for referral of bankruptcy matters to the bankruptcy judge. *Local Rules for Bankruptcy Practice and Procedure Conforming to Bankruptcy Amendments and Federal Judgeship Act of 1984,* Rule B–105 (June 26, 1985).

The question becomes, then, what it is that this court has delegated to the non-article III judges by operation of its rule of reference. The rule provides: "Any and all

---

1. The motion makes reference to the Federal Rules of Civil Procedure rather than the corresponding Bankruptcy Rules. Rule 12(b)(6) is made applicable to adversary proceedings by Bankruptcy Rule 7012(b). Rule 11's equivalent is found in Bankruptcy Rule 9011.

2. This change, taken alone, may not satisfy the concerns of *Marathon*. If Congress cannot constitutionally delegate the final decision of non-core matters to a non-article III court, then presumably the courts cannot accomplish by reference what Congress could not legislate. This is true because of the unique role of the judiciary in our constitutional scheme. In addition to the inter-branch checks and balances that are of concern in traditional separation of powers analysis, article III carries with it a guarantee to the public that private rights will be allowed vindication in independent tribunals. *Pacemaker Diagnostic Clinic of America, Inc. v. Instromedix, Inc.,* 725 F.2d 537, 541 (9th Cir.1984). In short, concern for the integrity of the judicial power prevents the judicial branch from delegating its essential attributes to non-article III creations. *See id.* at 544 (recognizing that article III requires that judiciary retain control over "interpretation, declaration, and application of federal law"). *See also* Note, *Masters and Magistrates,* 88 Harv.L.Rev. 779, 780–89 (1975).

cases under title 11 and any and all proceedings arising in or related to a case under title 11 are referred to the bankruptcy judges for the district of Utah, for consideration and resolution *consistent with law.*" Rule B–105 (emphasis added). Thus, under this rule the extent of delegation to the bankruptcy court is defined by the governing law. This court has delegated what Congress has allowed it to delegate, and no more. That brings the analysis to the second major change Congress enacted in response to *Marathon.*

The 1984 amendments included what is now 28 U.S.C. § 157, in which Congress divides bankruptcy jurisdiction along the lines suggested in the *Marathon* plurality opinion. *Marathon* suggests that non-article III courts may constitutionally fully adjudicate only those matters at the "core of the federal bankruptcy power." *Marathon,* 458 U.S. at 71, 102 S.Ct. at 2871. The amended code permits bankruptcy courts to enter final orders and judgments in these proceedings, appropriately termed "core" proceedings. 28 U.S.C. § 157(b) (Supp. III 1985). Proceedings that are not core proceedings but nevertheless related

to a bankruptcy case may still be heard by the bankruptcy court, but the non-article III court's authority is limited in such cases.

■■■ The case at hand is a non-core proceeding. *See* 28 U.S.C. § 157 (Supp. III 1985). Such a suit on a prepetition contract or account receivable is not a matter at the core of the bankruptcy power. *Northern Pipeline Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 71, 102 S.Ct. 2858, 2871, 73 L.Ed.2d 598 (1982) (holding that right to recover contract damages is not "at the core of the federal bankruptcy power"); *In re Colorado Energy Supply, Inc.,* 728 F.2d 1283, 1286 (10th Cir.1984) ("Related proceedings are those civil proceedings that, in the absence of a petition in bankruptcy, could have been brought in a district court or a state court"); *In re K–Rom Construction Corp.,* 46 B.R. 745 (S.D.N.Y.1985) (suit on construction contract a non-core proceeding); *In re George Woloch, Inc.,* 49 B.R. 68 (E.D.Pa.1985) (suit for prepetition accounts receivable a non-core proceeding).[3] In non-core proceedings such as the

---

**3.** Several bankruptcy courts have also correctly held that a suit by a debtor to collect prepetition accounts receivable is a non-core proceeding. *In re Century Brass Products, Inc.,* 58 B.R. 838 (Bankr.D.Conn.1986); *In re Satelco, Inc.,* 58 B.R. 781 (Bankr.N.D.Tex.1986); *In re Arnold Print Works, Inc.,* 54 B.R. 562 (Bankr.D.Mass. 1985), *aff'd,* 61 B.R. 520 (D.Mass 1986); *Englander Co. v. City Mattress of Amherst, Inc.,* 52 B.R. 875 (Bankr.C.D.Cal.1985); *In re B & L Oil Co.,* 46 B.R. 731 (Bankr.D.Colo.1985); *In re Atlas Automation, Inc.,* 42 B.R. 246 (Bankr.E.D. Mich.1984). *See also* 1 Collier on Bankruptcy ¶ 3.01 at 3–42 (1986) (describing as "egregious" error *Cotton v. Shirah (In re All American of Ashburn, Inc.),* 49 B.R. 926, 13 B.C.D. 93 (Bankr. N.D.Ga.1985), which held that a suit to collect prepetition accounts receivable was a core proceeding).

Other bankruptcy courts have erroneously held that actions by debtors to collect prepetition accounts receivable are core proceedings. *In re Windsor Communications Group, Inc.,* 67 B.R. 692 (Bankr.E.D.Pa.1986); *In re National Equipment & Mold Corp.,* 60 B.R. 133 (Bankr.N. D.Ohio 1986); *In re Ellwood City Iron & Wire Co.,* 59 B.R. 53 (Bankr.W.D.Pa.1986); *In re Bucyrus Grain Co.,* 56 B.R. 204 (Bankr.D.Kan. 1986); *In re Franklin Computer Corp.,* 50 B.R. 620 (Bankr.E.D.Pa.1985); *In re Baldwin-United Corp.,* 48 B.R. 49 (Bankr.S.D.Ohio 1985); *In re*

*Lion Capital Group,* 46 B.R. 850 (Bankr.S.D.N.Y. 1985). All of these cases share a common fallacy: They attempt to apply *Marathon* as defined by Chief Justice Burger in his dissent in that case. Specifically, they make their decision regarding whether a proceeding is core or noncore based on the potential applicability of state law to the proceeding.

The plurality opinion in *Marathon* did not base its decision on the applicability of state law. Instead, it rested on the broader distinction between private and public rights. But the various possible readings of *Marathon* are not of concern here; the question is not what jurisdiction *Marathon* left for the bankruptcy courts, for it invalidated the entire jurisdictional grant. The question becomes, then, what Congress delegated to the bankruptcy judges in the 1984 amendments. This is a question of statutory construction, not of defining constitutional limits.

Congress based its new jurisdictional scheme on the *Marathon* plurality opinion. This is clear from Congress' adoption of the plurality's language. The term "core" is itself drawn from the plurality opinion, 458 U.S. at 71, 102 S.Ct. at 2871, in the plurality's discussion of the public rights doctrine. It is also clear from the structure of the new system. Congress adopted the magistrate model for non-core proceedings, taking a hint from the plurality's discussion of that

present, Congress has carefully limited the bankruptcy court's power.

Congress's 1984 amendments to the bankruptcy code define those limits. Section 157(c)(1) of title 28 provides:

A bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a proceeding under title 11. In such a proceeding, the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected.

Section 157(c) is modeled after the magistrate system, a constitutional system of referral. 1 Collier on Bankruptcy ¶ 3.01[ii] (1986). *See United States v. Raddatz,* 447 U.S. 667, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980) (upholding constitutionality of 1978 Federal Magistrate's Act, based on district court's retention of ultimate control over final decisions). *See also Marathon,* 458 U.S. at 78, 102 S.Ct. at 2875 (distinguishing magistrate system on that basis). Under this new system, bankruptcy judges function as magistrates in non-core matters. The *Marathon* plurality recognized that such a system does not unconstitutionally erode article III judicial powers so long as "the ultimate decision is made by the district court." *Marathon,* 458 U.S. at 81, 102 S.Ct. at 2876 (quoting *Raddatz,* 447 U.S. 667, 683, 100 S.Ct. 2406, 2416, 65 L.Ed.2d 424 (1980)). *See also id.* at 78, 102 S.Ct. at 2875 (discussing 1978 Federal Magistrate's Act, which provided for limited referral to non-article III judges). Under section 157(c), the final order or judgment is entered by the district court. Congress followed the example of the magistrate

system and did not delegate to the bankruptcy judges the power to enter final orders in non-core proceedings absent the parties' consent.

■ Section 157(c)(2) provides:

Notwithstanding the provisions of paragraph (1) of this subsection [quoted above], the district court, with the consent of all the parties to the proceeding, may refer a proceeding related to a case under title 11 to a bankruptcy judge to hear and enter appropriate orders and judgments, subject to review under section 158 of this title.

Under this section, bankruptcy judges are not always limited to entering proposed findings and conclusions in non-core proceedings. With the parties' consent, the bankruptcy court may enter final determinations in such matters. This system of consensual reference has been found constitutional by ten circuits in the context of the Federal Magistrates Act. *K.M.C. Co. v. Irving Trust Co.,* 757 F.2d 752, 755 (6th Cir.1985); *Gairola v. Commonwealth of Virginia Department of General Services,* 753 F.2d 1281 (4th Cir.1985); *Fields v. Metropolitan Area Transit Authority,* 743 F.2d 890, 893–95 (D.C.Cir.1984); *Geras v. Lafayette Display Fixtures, Inc.,* 742 F.2d 1037, 1045 (7th Cir.1984); *Lehman Brothers, Kuhn Loeb v. Clark Oil & Refining Co.,* 739 F.2d 1313, 1316 (8th Cir.1984); *Puryear v. Ede's Ltd.,* 731 F.2d 1153, 1154 (5th Cir.1984); *Collins v. Foreman,* 729 F.2d 108, 120 (2d Cir.1984), *cert. denied,* 469 U.S. 870, 105 S.Ct. 218, 83 L.Ed.2d 148 (1984); *Goldstein v. Kelleher,* 728 F.2d 32, 36 (1st Cir.1984), *cert. denied,* 469 U.S. 852, 105 S.Ct. 172, 83 L.Ed.2d 107 (1984); *Pacemaker Diagnostic Clinic of America, Inc. v. Instromedix, Inc.,* 725 F.2d 537, 547 (9th Cir.1984) (en banc), *on remand,* 735 F.2d 1371, *cert. denied,* 469 U.S. 824, 105 S.Ct.

---

system's constitutionality. *See id.,* 458 U.S. at 76–84, 102 S.Ct. at 2874–2878. Moreover, Congress expressly rejected Chief Justice Burger's view of *Marathon. See* 28 U.S.C. § 157(b)(3). Significantly, Congress sought to avoid the unfounded confusion which has nevertheless resulted in the above cited bankruptcy opinions. Congress could not have been plainer: "A determination that a proceeding is not a core pro-

ceeding shall not be made solely on the basis that its resolution may be affected by State law." *Id.* The intent of Congress was to adopt the plurality's view of article III's requirements, whether or not that approach was constitutionally required. Under the 1984 amendments, applicability of state law is relevant to, but not determinative of, the question of whether a proceeding involves article III judicial powers.

100, 83 L.Ed.2d 45 (1984); *Wharton-Thomas v. United States*, 721 F.2d 922, 929–30 (3d Cir.1983).

■ Although the bankruptcy court had jurisdiction to hear the proceeding in the case at hand, 28 U.S.C. § 157(c)(1) (Supp. III 1985), it did not have power, in the absence of consent of all parties to the proceeding, to enter a final order such as that which is now appealed. *Id.;* 28 U.S.C. § 157(c)(2) (Supp. III 1985).

■ If the bankruptcy court had authority to enter the final order in this case, then it must have sprung from some form of consent to that jurisdiction by the parties. Nothing in the record in this case indicates that any of the parties to this proceeding have explicitly consented to the bankruptcy court entering a final order. As explained above, in order for a bankruptcy court to enter a final order in a non-core proceeding, all parties to the proceeding must consent.[4] 28 U.S.C. § 157(c)(2). A final order entered by a bankruptcy judge in a non-core proceeding without consent of all parties is invalid because the bankruptcy court is without statutory authority to fully exercise the district court's bankruptcy jurisdiction.

Section 157(b)(3) reads in part:

The bankruptcy judge shall determine, on the judge's own motion or on timely motion of a party, whether a proceeding is a core proceeding under this subsection or a proceeding that is otherwise related to a case under title 11.

It is important that the statute reads *shall determine.* In other words, at some point in the proceeding the bankruptcy judge is required to initially decide whether the proceeding is core or non-core in character. That decision will initially determine whether the bankruptcy judge enters the final order or judgment or whether the judge (absent the parties' consent) may only submit proposed findings and conclusions, and recommendations for *de novo* consideration by the district court. The bankruptcy judge initially determines whether the judge sits in the proceeding as an article I bankruptcy judge, exercising the federal bankruptcy power, or rather as a unit of the district court, analogous to a magistrate, making proposed findings of fact and conclusions of law and recommendations for the district court's *de novo* review.

However, section 157(b)(3) (quoted above) refers to a "timely motion of a party." Rule B–107 of this district's *Local Rules for Bankruptcy Practice and Procedure Conforming to Bankruptcy Amendments and Federal Judgeship Act of 1984,* (June 26, 1985), defines what is "timely" for purposes of section 157. It provides in pertinent part:

[A] particular proceeding shall be determined to be 'non-core' under 28 U.S.C. 157(b) only if a bankruptcy judge so determines *sua sponte* or rules on a motion of a party filed under 28 U.S.C. 157(b)(3) within [twenty days after the commencement of the proceeding, removal, entry of appearance or being served with summons, depending on which party makes the motion].

The task for this court is to construe this rule and section 157 so as to allow both provisions to operate consistent with Congress' intent in enacting the 1984 bankruptcy amendments.

■ The reading of Rule B–107 that this court seeks to avoid is the suggestion that the failure to timely move for a determination that a proceeding is non-core implies consent to the entry of a final judgment or order by the non-article III judge. The constitutional concerns for article III power elucidated in the *Marathon* plurality

---

**4.** Normally, of course, consent cannot confer subject matter jurisdiction. It is important to note that what is really meant by consent in this context is not affirmative consent to subject matter jurisdiction. In non-core matters, that jurisdiction will generally derive from the fact that the proceeding is ancillary to the district court's bankruptcy jurisdiction over the case as a whole. *See In re IML Freight, Inc.,* No.

C–86–0484 (D.Utah, Nov. 28, 1986). Rather, what the parties may consent to here is to waive their right to an article III forum. At the same time, section 157's requirement that the parties consent to final determination by the non-article III body is "jurisdictional" with respect to that body in the sense that without that consent the bankruptcy court has no statutory authority to enter final orders.

opinion which guided Congress in amending the bankruptcy code cannot be satisfied by a system in which consent to full determination by the bankruptcy judge arises inevitably by operation of law. *Accord In re K–Rom Construction Corp.*, 46 B.R. 745 (S.D.N.Y.1985) (implying that consent to entry of final judgment by bankruptcy court must be part of record); *Englander Co. v. City Mattress of Amherst, Inc. (In re U.S. Bedding Co.)*, 52 B.R. 875 (Bankr. C.D.Cal.1985) (lack of explicit consent required proposed findings of fact and conclusions of law, and entry of final judgment by district judge).[5] Explicit consent by the parties should be the preferred method of deriving consent under § 157(c)(2). However, this does not prevent the bankruptcy judge, in appropriate circumstances, from finding that the parties' conduct implies such consent. But that finding, too, needs to be made an appealable part of the record. To hold otherwise would be contrary to the article III values expressed in the *Marathon* plurality, and thus contrary to Congress's intent.

■ This is not to say that Rule B–107 is without meaning. On the contrary, it may be critical in determining in which forum a proceeding is held. Section 157(b)(3) of title 28 requires the bankruptcy judge to initially determine whether the proceeding is core or non-core; it does not prescribe when that determination is to be made. When parties fail to timely move the bankruptcy court for an early determination of whether the proceeding is core or non-core, they waive their right to object to the reference of a non-core matter to the non-article III tribunal. The parties' failure to so move the court, however, does not alter the statutory limits on the bankruptcy court's jurisdiction. Section 157(b)(3) still requires the bankruptcy judge to determine the nature of the proceeding, and section 157(c)(1) still places limits on the bankruptcy judge's jurisdiction in non-core matters. Rather, failure to timely move the court places the timing of that determination entirely within the discretion of the bankruptcy judge. The bankruptcy judge need not make the *sua sponte* determination until the time when either the final order or proposed findings are to be prepared.

■ In summary, the exercise of article III power by a bankruptcy judge requires the consent of all parties to the proceeding. Generally, just as in the case of consenting to determination by a magistrate, this consent should be explicit and on the record. Or, in certain cases, the bankruptcy judge may find that consent implied by the parties' unequivocal conduct. In this case neither that consent nor such a finding appears in the record. Moreover, the order appealed from cannot fairly be construed as proposed findings of fact and conclusions of law. This leaves ambiguous the standard of review to be applied by this court. Entry of consent would mean review would be by appeal, and findings of

---

**5.** As section 157(c) is patterned after the Federal Magistrates Act, *see supra*, p. 8, cases from that model concerning what is required for "consent" to final determination by the non-article III judge are instructive. In general, courts construing the consent required for determination by a magistrate under 28 U.S.C. § 636(c) hold that such consent must be "clear and unambiguous" and cannot be inferred. *Adams v. Heckler*, 794 F.2d 303, 306–07 (7th Cir.1986); *Geaney v. Carlson*, 776 F.2d 140, 142 (7th Cir. 1985); *Archie v. Christian*, 768 F.2d 726, 728 (5th Cir.1985); *Parks v. Collins*, 761 F.2d 1101, 1106 (5th Cir.1985); *Glover v. Alabama Board of Corrections*, 660 F.2d 120, 124 (5th Cir.1981); *Alaniz v. California Processors*, 690 F.2d 717 (9th Cir.1982).

Admittedly, the Magistrates Act is not an exact parallel to the bankruptcy system enacted in the 1984 amendments. The Magistrates Act contains explicit procedures for obtaining consent from parties, including a requirement that the parties be informed of their right not to consent. 28 U.S.C. § 636(c)(2). But as several of the courts above have noted, "valid consent is the linchpin of the constitutionality of 28 U.S.C. § 636(c)." *Adams*, 794 F.2d at 307; *see also Geaney*, 776 F.2d at 142; *Glover*, 660 F.2d at 124. *Pacemaker Diagnostic Clinic of America, Inc. v. Instomedix, Inc.*, 725 F.2d 537, 542 (9th Cir.1983) (en banc) (all noting that the consent provisions of the Magistrates Act were constitutionally required and citing *Marathon* ). Therefore, because the decisions construing what consent is required for a non-article III magistrate recognize the constitutional issues raised in that construction, they have some applicability to what consent is required to give jurisdiction to a non-article III bankruptcy judge.

fact would not be set aside unless clearly erroneous. Bankr. Rule 8013. On the other hand, if consent is lacking, review in this court is de novo and requires proposed findings and conclusions. 28 U.S.C. § 157(c)(1). Therefore, this court must remand for entry of either consent by both parties or proposed findings and conclusions and a proposed judgment or order in accordance with 28 U.S.C. § 157(c) and Local Rule B–108.

Accordingly, the case is REMANDED for further proceedings.

So ordered.