In re MARILL ALARM SYSTEMS, INC., and Marill Security Services, Inc., Debtors.

MARILL ALARM SYSTEMS, INC., Marill Security Services, Inc., Eddy Marill and Mirtha Marill, Plaintiffs/Appellees,

v.

EQUITY FUNDING CORPORATION, Theodore Moss and Donald Braverman, Defendants/Appellants.

Nos. 87–6450–CIV, 85–02033–BKC–SMW, 85–02034–BKC–SMW.

United States District Court, S.D. Florida, Miami Division.

Dec. 1, 1987.

Michael Winer, Ft. Lauderdale, Fla., for plaintiffs/appellees.

Chad P. Pugatch, P.A., Ft. Lauderdale, Fla., for defendants/appellants.

## MEMORANDUM OPINION AND ORDER INVALIDATING FINAL JUDGMENT OF BANKRUPTCY COURT, PARTIALLY ADOPTING PROPOSED FINDINGS AND CONCLUSIONS AND ENTERING FINAL JUDGMENT FOR PLAINTIFFS

SPELLMAN, District Judge.

This adversary proceeding is before the Court on defendants/appellants' appeal from a final judgment of the United States Bankruptcy Court for the Southern District of Florida, awarding plaintiffs/appellees $260,500.44 in damages, 68 B.R. 399. The bankruptcy court held that defendants/appellants violated the Florida RICO statute, Fla.Stat. §§ 895.01 *et seq.*, by their scheme to charge usurious interest on a loan to plaintiffs/appellees.

## I. BACKGROUND

Plaintiffs/appellees Marill Security Services, Inc., Marill Alarm Systems, Inc., and owners Eddy and Mirtha Marill (hereinafter collectively referred to as "Marill") provide security systems and protection to condominiums, shopping centers and industrial parks. Defendant/appellant Donald Braverman ("Braverman") acted as Marill's accountant since shortly after the inception of the business. In 1982 Marill began to experience the first of a series of financial difficulties. Braverman met with defendant/appellant Theodore Moss ("Moss") and arranged for financing from an organization known as Open Door Corporation ("Open Door") and Open Door's owner, Richard Stein, defendants below, procuring an initial loan of $20,000 at a stated interest rate of 18%. On the same date that this initial loan transaction was closed, Braverman created Equity Funding Corporation ("Equity Funding"), another defendant/appellant herein. Braverman represented to the Marills that they were required to make additional payments on the loan in order to secure a relationship with Open Door and to keep open the possibility of additional financing. These "additional loan payments" were paid to Equity Funding and collected by Braverman. Over the next three years, Open Door loaned additional funds to Marill until, ultimately, Marill had borrowed a total of approximately $175,000 from Open Door. Throughout that time period, a pattern developed whereby the amount collected by and paid to Equity Funding in "additional loan payments" increased each time Open Door loaned more funds to Marill. Ultimately, Marill paid a total of $86,833.48 to Equity Funding in additional payments.[1]

Marill Alarm Systems and Marill Security Services filed a voluntary petition for bankruptcy under Chapter 11 in the United States Bankruptcy Court for the Southern District of Florida on September 9, 1985. On October 11, 1985, Eddy and Mirtha Marill also filed for voluntary bankruptcy under Chapter 11 in the same court. On February 3, 1986, this adversary proceeding was filed. The Complaint alleges that Open Door and Equity Funding, through Moss and Braverman, conspired to charge and/or collect usurious interest from Marill on the Open Door loans. Count I claims that appellants violated Fla.Stat. § 687.071 (the Florida usury statute) and prays that Open Door's notes be cancelled and that all principal and interest paid be returned to

---

1. The *amount* of these payments is not in dispute. The parties agree that the amount in controversy is the $86,833.48 in payments. *See* Trial Transcript at 9.

Marill. Count II alleges that appellants' conduct constitutes a "pattern of racketeering activity" pursuant to Fla.Stat. § 895.02(1)(a) (Florida RICO) and prays for treble damages thereunder. Count III prays for a determination as to the validity and priority of Open Door's liens. Count IV seeks an order enjoining appellants from collecting the debt. On October 3, 1986, Marill amended its complaint by adding two counts. Count V alleges that the funds paid to Equity represent a fraudulent conveyance under 11 U.S.C. § 548 and Count VI makes a similar claim under Florida's fraudulent transfer statute (as made applicable through 11 U.S.C. § 544(b)). Marill settled with Open Door and Richard Stein prior to trial.

On November 3 and November 6, 1986, a trial was held before the Honorable Sidney M. Weaver in the United States Bankruptcy Court for the Southern District of Florida. After trial, the Court permitted Marill to amend its complaint to conform to the evidence by adding a claim under Fla.Stat. § 817.035 (obtaining property under false pretenses).

On December 30, 1986, Judge Weaver entered his Findings of Fact and Conclusions of law and entered Final Judgment on the adversary complaint for Marill in the amount of $260,500.44 (representing $86,833.48 in damages, trebled). This appeal followed.

## II. THE BANKRUPTCY JUDGE'S FINDINGS OF FACT AND CONCLUSIONS OF LAW

The bankruptcy judge based his findings and conclusions solely on Marill's Florida RICO claim. The judge found that the facts and circumstances surrounding the financial arrangement between appellants and Marill indicated that appellants were in fact charging Marill interest at a usurious rate. He also found that there was a fraudulent practice here because Braver-

man collected the payments under false pretenses, thus violating Fla.Stat. § 817.035.

Specifically, the judge doubted the credibility of Braverman's testimony that the payments to Equity Funding represented "consulting fees" and not additional interest. The judge did find Marill's testimony to be credible in light of the circumstantial evidence presented at trial. The payment history, presented at trial, as to both Open Door and Equity Funding, reflected a tie-in as to amounts and dates of payments which he believed to be more than coincidental. Equity Funding, with its purported consulting arrangement, was incorporated on the very same date that the first loan was made by Open Door. Braverman's testimony as to the consideration for the "consulting arrangement" contradicted the actual payments. There was no comprehensive billing arrangement, engagement letter or other documentation reflecting the basis for the purported consulting arrangement. Moreover, there was no satisfactory explanation of services provided to warrant the amount of fees claimed in excess of charges for normal accounting services.

Accordingly, the judge concluded that either of these violations (usury or obtaining property under false pretenses) would support liability under Florida's RICO statute as a pattern of racketeering activity. Because he awarded treble damages in the amount of $260,500.44, the judge further concluded that this award encompassed all damages sustained by Marill and found it unnecessary to reach the remainder of Marill's claims.

## III. DISCUSSION

Appellants argue that the bankruptcy judge was without jurisdiction to enter a dispositive judgment in this action because it is a related, "non-core" proceeding and his jurisdiction was limited by 28 U.S.C. § 157(c)(1).[2] Pursuant to this section, the

2. 28 U.S.C. § 157(c)(1) provides:
 A bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11. In such proceeding, the bankruptcy judge shall submit

proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after

bankruptcy judge must determine, on his own motion or by the motion of a party, whether an adversary proceeding is core or non-core. *See* 28 U.S.C. § 157(b)(3). In the case at bar, the bankruptcy judge did not make this critical determination. On March 25, 1986, Open Door filed its Motion for Determination of Nature of Proceedings with the bankruptcy judge, which requested that he determine whether the proceeding was core or non-core. The judge *denied* Open Door's Motion without prejudice on April 16, 1986.[3] Therefore, this action proceeded to trial without a determination as to the nature of the proceedings.

■ It is a critical and mandatory duty of the bankruptcy judge to determine the nature of an adversary proceeding pursuant to 28 U.S.C. § 157(b)(3). If the bankruptcy judge enters a final judgment without having made such a determination, it must be invalidated. In *In re Nell*, 71 B.R. 305 (D.Utah 1987), the court held that even if the parties do not move for a determination as to the nature of the proceedings, the ultimate responsibility to do so lies with the bankruptcy judge, and stated:

> Section 157(b)(3) of title 28 requires the bankruptcy judge to initially determine whether the proceeding is core or non-core; it does not prescribe when that determination is to be made. When parties fail to timely move the bankruptcy court for an early determination of whether the proceeding is core or non-core, they waive their right to object to the reference of a non-core matter to the non-article III tribunal. *The parties' failure to so move the court, however, does not alter the statutory limits on the bankruptcy court's jurisdiction. Section 157(b)(3) still requires the bankruptcy judge to determine the nature of the proceeding, and section 157(c)(1) still places limits on the bankruptcy*

> *judge's jurisdiction in non-core matters.* Rather, failure to timely move the court places the timing of that determination entirely within the discretion of the bankruptcy judge. The bankruptcy judge need not make the *sua sponte* determination until the time when either the final order or proposed findings are to be prepared.

*In re Nell*, 71 B.R. at 311 (emphasis added). *See also In re STN Enterprises, Inc.*, 73 B.R. 470, 479 (Bankr.D.Vt.1987); *In re Nanodata Computer Corp.*, 52 B.R. 334, 341 (Bankr.W.D.N.Y.1985).

The reason this function is so critical stems from the Supreme Court's decision in *Northern Pipeline Construction Co. v. Marathon Pipeline Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). In *Marathon*, a plurality held that Congress' Bankruptcy Reform Act of 1978 involved an unconstitutional grant of power because it empowered an article I bankruptcy court to hear controversies required by the constitution to be heard by an article III court. *Id.* at 60–61, 102 S.Ct. at 2865–66; *see also Commodity Futures Trading Commission v. Schor,* —— U.S. ——, 106 S.Ct. 3245, 3256, 92 L.Ed.2d 675 (1986).[4] It was partly in response to the *Marathon* holding that Congress enacted the 1984 amendments to the Bankruptcy Act, including section 157, which limited the bankruptcy court's jurisdiction. *In re I.A. Durbin, Inc.*, 62 B.R. 139, 143 (S.D.Fla.1986); *In re Nanodata Computer Corp.*, 52 B.R. at 339. Accordingly, the Final Judgment entered by the bankruptcy judge in the case at bar is invalid because it was rendered outside of his jurisdiction. *Cf. Matter of Kubly*, 818 F.2d 643, 645 (7th Cir.1987) (bankruptcy court's "power must be conferred, and it may not be enlarged by the judiciary because the judge believes it wise to resolve

reviewing de novo those matters to which any party has timely and specifically objected. (West supp.1987).

3. The bankruptcy judge denied the Motion "without prejudice to its reconsideration at a later date." The Motion was never reconsidered, however.

4. Former sections 1471(a)–(c), Title 28 U.S.C., conferred the full jurisdictional authority of the district court over bankruptcy cases and proceedings to the bankruptcy court.

the dispute").[5]

■ Marill argues that, notwithstanding the possible lack of jurisdiction of the bankruptcy court, the Final Judgment is valid because appellants *impliedly consented* to the full jurisdiction of the bankruptcy court, pursuant to 28 U.S.C. § 157(c)(2),[6] by their failure to raise a timely objection. *See, e.g., Rainey v. International Harvester Credit Corp.*, 59 B.R. 987, 990 (N.D.Ill.1986); *Energy Savings Center, Inc. v. Council*, 54 B.R. 100, 102 (Bankr.E.D.Pa.1985). To accept this argument here, however, where the bankruptcy judge has not even made an initial determination as to the nature of the proceedings, would be absurd because there is nothing to which any party could object in the first place. *Cf. In re Nell, supra.* Moreover, to hold that any party impliedly consented

here would be tantamount to obliterating the critical distinction between article I and article III courts underlying the Court's decision in *Marathon*. Therefore, a party in a related proceeding pursuant to 28 U.S.C. §§ 157 *et seq. cannot* be held to have consented, impliedly or otherwise, to the full jurisdiction of the bankruptcy court until the bankruptcy judge, by his own motion or by the motion of a party, explicitly determines that the proceeding is non-core. *See* 28 U.S.C. §§ 157(b)(3) and (c)(2); *In re Lombard–Wall Inc.*, 48 B.R. 986, 990 (S.D.N.Y.1985) ("Only after determining that a proceeding is not a core proceeding should a court consider whether the parties consented to the bankruptcy court's jurisdiction").[7] The Final Judgment entered by the bankruptcy judge, therefore, is invalid. *See In re Nell*, 71 B.R. 305, 310 (D.Utah 1987).[8]

---

**5.** In the case at bar, the bankruptcy judge's failure to determine the nature of the proceeding is innocuous because this Court ultimately adopts his findings and conclusions. *See infra.* The failure to make this determination in other cases, however, could result in the unconstitutional final adjudication of a non-core adversary proceeding by an article I bankruptcy court.

**6.** 28 U.S.C. § 157(c)(2) provides, in pertinent part:

Notwithstanding the provisions of paragraph (1) of this subsection, the district court, *with the consent of all the parties to the proceeding,* may refer a proceeding related to a case under title 11 to a bankruptcy judge to hear and determine and to enter appropriate orders and judgments....

(West supp.1987) (emphasis added).

**7.** It should be noted that effective August 1, 1987, Bankruptcy Rule 7008, pertaining to pleading requirements, was amended to read: "In an adversary proceeding before a bankruptcy judge, the complaint ... shall contain a statement that the proceeding is core or non-core and, if non-core, that the pleader does or does not consent to entry of final orders or judgment by the bankruptcy judge." The Advisory Committee Note to that Rule provides that "Only express consent in the pleadings or otherwise is effective to authorize entry of a final order or judgment by the bankruptcy judge in a non-core proceeding." Accordingly, in any adversary proceeding in a bankruptcy court which was filed after August 1, 1987, *the parties cannot impliedly consent to a final judgment by the bankruptcy court.*

The case at bar was filed approximately two years ago and is not subject to the new bankruptcy rules. Yet this subsequent amendment

bears out this Court's analysis and exemplifies Congress' concern over the power to be exercised by an article I court, discussed at length in *Marathon.*

**8.** Had the judge determined the nature of this proceeding, he would have found it to be non-core. Numerous courts have noted the necessity of defining core proceedings narrowly so as to conform to the constitutional proscription of *Marathon. E.g., Matter of Wood,* 825 F.2d 90, 95 n. 25 (5th Cir.1987); *Piombo Corp. v. Castlerock Properties,* 781 F.2d 159, 162 (9th Cir.1986); *In re Satelco, Inc.,* 58 B.R. 781, 788 (Bankr.N.D. Tex.1986). Moreover, in determining the nature of a proceeding for purposes of determining core status, the court must look to both the form and the substance of the proceeding. *Matter of Wood, supra,* 825 F.2d at 97. The substance of this proceeding does not support a finding of core status. While Marill sets forth six causes of action in its complaint, two of which arguably "arise under" title 11, the essential issue in this proceeding is whether appellants are liable under Florida law for their alleged scheme to collect usurious interest from and defraud Marill. Accordingly, the bankruptcy judge's jurisdiction was limited pursuant to 28 U.S.C. §§ 157 *et seq. See, e.g., In re Counts,* 54 B.R. 730, 735 (Bankr.D.Colo.1985) (court held claims for "breaches of contract, fraud, and usury, are related proceedings, and ... this Court is without jurisdiction to finally determine them"); *Matter of Shell Materials, Inc.,* 50 B.R. 44, 46 (Bankr.M.D.Fla.1985) (same).

The only arguable basis for conferring core status to this proceeding would be pursuant to the "catch-all" provision of section 157 (28 U.S. C. § 157(b)(2)(O)) because Marill's claim "affects the liquidation of the assets of the estate."

Appellant is now entitled to a *de novo* review of the proceedings below. This court will therefore view the bankruptcy judge's findings of fact and conclusions of law as *proposed* findings and conclusions and will view the parties' appellate briefs as the objections thereto. *See* 28 U.S.C. § 157(c)(1). In so doing, this court *may* disregard the bankruptcy judge's findings completely. *Matter of Ferris,* 764 F.2d 1475, 1478 (11th Cir.1985); *Matter of Emergency Beacon Corp.,* 52 B.R. 979, 987 (S.D.N.Y.1985); *In re G & L Packing Co., Inc.,* 41 B.R. 903, 913 (N.D.N.Y.1984); *but see* 28 U.S.C. § 157(c)(1) (district court should enter final order "after reviewing de novo *those matters to which any party has timely and specifically objected*") (emphasis added).

 The bankruptcy judge found that appellants' scheme to collect usurious interest from Marill provided the predicate "racketeering activity" upon which to base a violation of Florida's RICO statute, Fla. Stat. §§ 895.01 *et seq.*[9] Appellants object to the bankruptcy judge's conclusion that Equity Funding and/or Open Door collected a usurious rate of interest from Marill pursuant to the Open Door loans. They argue that the payments to Braverman and Equity Funding were merely commissions paid by a borrower to its agent and, as such, do not amount to additional interest payments. *See Investment Funds Corp. v. Bomar,* 303 F.2d 592, 596 (5th Cir.1962). But upon a *de novo* review, it appears to this Court that Braverman was not acting as an agent *solely* on Marill's behalf. Indeed, Braverman testified that he was the "go-between" on the loans. Trial transcript at 246. Braverman may have initial-

ly procured the loans for Marill, but his relationship with Open Door developed in such a way that it could appear that Braverman was *Open Door's* agent as well. Accordingly, appellants' "commission" argument must fail. *See North American Mortgage Investors v. Cape San Blas Joint Venture,* 378 So.2d 287 (Fla.1979) (court held that fees paid to an agent who represents both the borrower and the lender could be usurious interest payments).

It is well settled that a court must look to the substance of a transaction and *not* the form to determine whether a transaction not cast in the form of a loan nevertheless constitutes a usurious loan transaction. *Beausejour Corp., N.V. v. Offshore Development Co., Inc.,* 802 F.2d 1319, 1320 (11th Cir.1986); *In re Mickler,* 50 B.R. 818 (Bankr.M.D.Fla.1985); *Growth Leasing, Ltd. v. Gulfview Advertiser, Inc.,* 448 So. 2d 1224 (Fla. 2nd DCA 1984). From the facts and circumstances surrounding the transactions between Marill and appellants, the payments to Equity Funding pursuant to the Open Door loans could certainly be viewed as usurious interest payments. Equity Funding was created on the very same date that the first loan from Open Door was arranged. The payments to Equity Funding were usually made on the same date as the payments to Open Door and the amounts were curiously tied-in to the amount of the actual loan payment. This Court finds these circumstances to be more than coincidental, as did the bankruptcy court. *See* Findings and Conclusions at 5. Moreover, the amount of the payments to Equity Funding increased each time Open Door loaned more funds to Marill. Braver-

---

If this Court conferred core jurisdiction on that basis, however, virtually *any* claim which could increase the assets in the estate would entitle the bankruptcy court to ignore the constitutional proscription set forth in *Marathon.* This Court will not interpret section 157 so broadly. *See In Re STN Enterprises, Inc.,* 73 B.R. 470, 481–82 (Bankr.D.Vt.1987).

**9.** Section 895.02(1)(a)(8) provides that a violation pursuant to Fla.Stat. §§ 687 *et seq.* is a "racketeering activity" for purposes of that statute. Fla.Stat. § 687.071(3) provides, in pertinent part:

... any person making an extension of credit to any person, who shall willfully and knowingly charge, take or receive interest thereon at a rate exceeding forty-five percent per annum or the equivalent rate for a longer or shorter period of time, whether directly or indirectly or conspire so to do, shall be guilty of a felony of the third degree....

(West supp.1987). The judge found that the payments to Equity Funding in conjunction with those to Open Door reflected a total interest rate *greater than 74 percent* when figured on an annual basis. *See* Findings and Conclusions 68 B.R. at 401.

man exerted a great deal of control over Marill as its sole accountant, and the relationship between Braverman and Open Door, according to much of the testimony at trial, is suspiciously vague.[10] Therefore, this Court adopts the findings and conclusions of the bankruptcy judge with respect to appellants' liability under the Florida Usury Statute, Fla.Stat. §§ 687 *et seq.*

## IV. CONCLUSION

This Court has *independently* found that Marill met its burden of proof in establishing that the pattern of activities engaged in by appellants constitutes a violation of the Florida RICO statute. Appellants' charging and collecting what appears to be usurious interest constitutes a sufficient pattern of racketeering activity as contemplated by Fla.Stat. § 895.02. Accordingly, it is hereby

ORDERED AND ADJUDGED that the Final Judgment of the bankruptcy court is invalidated for having been entered without jurisdiction. It is further ORDERED that the proposed findings and conclusions of the bankruptcy judge are adopted insofar as those findings and conclusions base appellants' liability on their violation of the Florida usury and RICO statutes.[11] In addition, the proposed findings and conclusions of the bankruptcy judge are adopted with respect to Marill's civil remedy pursuant to Fla.Stat. § 895.05(7), which mandates an award of treble damages in the amount of $260,500.44. Marill is also entitled to recover attorneys' fees and costs. *See Banderas v. Banco Central del Ecuador*, 461 So.2d 265 (Fla. 3d DCA 1985). Marill is hereby directed to submit to this Court, within 15 calendar days, a Final Judgment in accordance with this Opinion and Order.

---

**10.** Many of the bankruptcy judge's findings are based upon the fact that he simply did not believe a good portion of appellants' testimony at trial. *See* Findings and Conclusions 68 B.R. at 401–02. Therefore, this Court should accord those findings the deference to which they are entitled. *E.g., In re Chalik*, 748 F.2d 616, 619 (11th Cir.1984) ("the trial judge is best able to assess the credibility of the witnesses before him and thus the evidentiary content of their testimony").

**11.** Appellants also object to the bankruptcy judge's conclusion that their conduct was a fraudulent practice pursuant to Fla.Stat. § 817.035(1). This Court need not reach that objection, however. Appellants have independently violated the Florida RICO statute by their scheme to collect usurious interest from Marill on the Open Door Loans. *See* Fla.Stat. § 895.02(1)(a)(8).