In re ZACHMAN HOMES, INC., a Minnesota corporation, a/k/a Zachman Homes, Debtor.

Bankruptcy No. BKY 4-83-1799.

United States Bankruptcy Court, D. Minnesota.

April 24, 1985.

Barbara G. Stuart, of Moss & Barnett, Minneapolis, Minn., for Federal Lumber Co.

Louis W. Brenner, of Brenner, Workinger & Thompson, Minneapolis, Minn., for Lyman Lumber Co., Sunrise Elec., Inc., and Lampert Lumber Co.

Daniel Biersdorf, of Estes, Parsinen & Levy, Minneapolis, Minn., for David C. Bell Inv. Co., and Bldg. Material Wholesalers, Inc.

Thomas G. Lovett, Jr., of Thomson, Lovett, Wahlfors & Moran, Ltd., Minneapolis, Minn., for Trustee.

Kurt M. Anderson, of Thomas P. Balyk & Associates, St. Paul, Minn., for F.M. Frattalone Excavating and Grading, Inc.

'Faye Knowles, of Arnold & McDowell, Minneapolis, Minn., for Westwood Planning and Engineering Co.

Phillip W. Kunkel, of Moratzka, Dillon, Kunkel & Storkamp, Hastings, Minn., for D.L.R. Const.

## ORDER DETERMINING JURISDICTION

MARGARET A. MAHONEY, Bankruptcy Judge.

The above-entitled matter came on for hearing before the Honorable Margaret A. Mahoney, Bankruptcy Judge, on March 22, 1985. Presently before the Court are motions by Federal Lumber Company for an order determining the procedure for adjudication of mechanic's lien claims arising out of this bankruptcy case, and of Lyman Lumber Company, Sunrise Electric, Inc., and Lampert Lumber Company (to be referred to collectively herein as Lyman Lumber) for an order determining the validity, priority, and amount of certain mechanic's liens. Of immediate concern, however, are jurisdictional questions raised by counsel for the construction mortgagees David C. Bell Investment Company and Building Material Wholesalers, Inc. As shall be discussed herein, this Court has both jurisdiction over and the power to hear and finally determine these matters pursuant to 28 U.S.C. §§ 1334 and 157, and Judge Lord's July 27, 1984, Order of Reference.

Before reaching the jurisdictional issue, which appears to be the central concern of all parties interested in this matter, it is necessary to fully understand the procedural context in which the present motions arise. The Debtor, a developer and builder of residential housing units, filed for chapter 11 protection on November 2, 1983.

The case was subsequently converted to a chapter 7 case on December 1, 1984.[1] At the date of filing of its bankruptcy petition, approximately 50 housing units of the Debtor remained in various stages of construction. To facilitate completion of these unfinished units this Court established, by way of Standing Order dated December 29, 1983, a procedure whereby the Debtor could complete and sell the housing units free and clear of liens pursuant to section 363(c)(1) and (f).

The December 29 Standing Order specifically provided that subject to the requisite notice and absent any written objection filed with this Court, an Order would issue concerning property sought to be sold authorizing such sale free and clear of all liens and interests therein, with any such lien or interest to attach to the proceeds of sale. The Order further provided as follows:

> All disputes as to validity, priority, and extent of claims to the proceeds of sale shall be subsequently determined by the Bankruptcy Court upon notice and hearing to the affected parties. Until a resolution of any such dispute, the amount of the proceeds affected by the same shall be held in an escrow account established by the Examiner for such purpose.

The Court's records indicate that all parties herein concerned received notice not only of the original motion by the Debtor for a standing order authorizing a procedure for sale of property free and clear of liens, but of such Standing Order as well. Moreover, counsel actually in attendance at the December 28, 1983, hearing which resulted in the Standing Order included counsel for the construction mortgagees.[2] No motion for reconsideration or appeal was ever filed concerning the Standing Order.

---

1. This case was first converted to a chapter 7 on September 11, 1984, but was subsequently reconverted to a chapter 11 by Order dated September 24, 1984. The purpose behind the conversion back to a chapter 11 was to allow the debtor-in-possession to complete additional housing units so as to maximize their value to the estate. By virtue of the September 24 Order, the case was finally converted to a chapter 7 on December 1, 1984.

2. It should be noted that in prior Orders B–T Investors appears as a construction mortgagee in lieu of Building Material Wholesalers, Inc. Due to an intervening name-change, that construction mortgagee is now referred to as Building Material Wholesalers, Inc. They are in fact the same entity.

By an undated stipulation subsequently filed with the Court, counsel for the construction mortgagees, the Mechanic's Lien Claimants Secured Creditors' Committee, Lyman Lumber Company, and the Unsecured Creditors' Committee consented to the following:

> to the issuance of orders by the Bankruptcy Court, pursuant to the Court's December 29, 1983 Standing Order to Sell Free and Clear, permitting the Debtor to sell properties free and clear and disbursing the proceeds of sale in accordance with the Examiner's Report, subject to the escrowing of proceeds of sale claimed by the construction lender as attorneys' fees and claimed by mechanics and materialmen for pre-order items pursuant to the standing objections by Lyman Lumber Company and David C. Bell Investment Co. regarding the priority, validity and amount of mechanic's lien claims and subject to standing objections by Lyman Lumber Company and the Mechanic's Lien Claimants Secured Creditors' Committee regarding the payment of attorneys' fees to the construction lender.

In attendance at the hearing in which the stipulation was presented to the Court were the original signatories to the stipulation or their representatives. On February 21, 1984, the Court entered an Order approving the stipulation and further ordering that:

> All proceeds which are the subject of standing objections are to be escrowed by the Examiner subject to a later determination by the Bankruptcy Court as to the validity of the claims as to those proceeds.

The signatories to the Stipulation, as well as other parties in attendance at the hearing, were mailed copies of such Order as notice thereof on February 22, 1984. No motion for reconsideration or appeal was ever filed concerning the February 21, 1984, Order.

On May 9, 1984, after a hearing on the motion by the Debtor and the Mechanic's Lien Claimants Secured Creditors' Committee, and their appearing no objection to such motion, the Court entered an Order amending the December 29, 1983, Standing Order. The Amended Order provided in relevant part as follows:

> Dates for hearings to resolve individual objections and standing objections with respect to sales free and clear of the debtor's properties and the distribution of proceeds therefrom shall be scheduled by this Court at a scheduling conference to be conducted on May 10, 1984, and thereafter, from time to time in consultation with counsel for the debtor, the Mechanic's Lien Claimant, [sic] Secured Creditors' Committee, the Official Committee of Unsecured Creditors and counsel for parties who have asserted individual objections or standing objections.

Counsel originally present at the hearing concerning the December 29, 1983, Standing Order, and who were also signatories to the Stipulation approved pursuant to the Court's February 21, 1984, Order were similarly present at the hearing on the motion to amend the Standing Order. All such counsel received copies of the Amending Order as notice thereof and filed no motion for reconsideration or appeal thereto.

On August 14 through 21, 1984, and upon agreement of the parties to present to the Court four test cases, a hearing was held on the motion of the Mechanic's Lien Claimants Secured Creditors' Committee to determine the validity, priority, and extent of mechanic's liens on four separate properties governed by the December 29, 1983, February 21, 1984, and May 9, 1984, Orders. As a result of that hearing, on November 30, 1984, this Court entered an Order determining that certain mechanic's liens attached prior to the filing by the construction mortgagees of mortgages on the property concerned therein. Both construction mortgagees have appealed this Court's November 30, 1984, Order.

Both prior to and during the hearing on the present motions before the Court it was apparent that the bankruptcy estate has no financial interest whatsoever in the funds which were escrowed upon the sales free and clear. There have been numerous representations by the parties that the aggre-

gate . claims against the escrowed funds greatly exceed the total amount of such funds. Furthermore, the Chapter 7 trustee stated on the record at the hearing on this matter that he takes no position on the motions.

## DISCUSSION

As a preliminary matter to the motions made by Federal Lumber Co. and Lyman Lumber, the construction mortgagees question this Court's jurisdiction to hear and determine the issues raised thereby. They correctly describe Federal Lumber's motion as one to determine whether future proceedings relative to the determination of validity and priority of lien claims are to be core proceedings pursuant to 28 U.S.C. § 157(b)(3). Technically, they assert, this motion cannot be entertained because no proceeding has formally been commenced by Federal Lumber Co. on any of the properties other than those specified in the test cases. They may be technically correct. Any jurisdictional or other determination prior to the formal commencement of proceedings would be premature and may in effect constitute an advisory opinion by this Court. It is unnecessary at this time, however, to address the full scope of the Constitutional prohibition in Article III against advisory opinions as it may apply to an Article I Bankruptcy Court. Instead, my decision in this matter is grounded in Lyman Lumber's motion which does in fact seek relief within the context of a formally commenced proceeding.

Despite the jurisdictional concerns voiced by the construction mortgagees and apparently harbored by other parties as well, I am compelled to conclude that all parties are confusing this Court's jurisdiction over the present matter with my power as Bankruptcy Judge pursuant to 28 U.S.C. § 157.

There is little doubt that jurisdiction exists in this case. Resolution of the question of my judicial powers under section 157, however, is somewhat more troublesome.

### A. *Jurisdiction*

As a result of the recent jurisdictional amendments articulated by Congress in The Bankruptcy Amendments and Federal Judgeship Act of 1984, any analysis of a Bankruptcy Court's jurisdiction in a particular matter must begin with a discussion of 28 U.S.C. § 151, as amended therein. That section establishes the Bankruptcy Court as a unit of the District Court and describes each Bankruptcy Judge as a judicial officer of the District Court.[3] While the full extent to which this arrangement differs from that previously existing remains unclear, it is at least minimally apparent that the Bankruptcy Court now serves as a part of the District Court, rather than in any way independent from it.[4] Therefore, Bankruptcy Court jurisdiction arises concurrently with the grant of jurisdiction to the District Court.

District Court jurisdiction over bankruptcy cases and proceedings, and, therefore, Bankruptcy Court jurisdiction over the same, is governed by 28 U.S.C. § 1334. That section provides as follows:

(a) Except as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under title 11.

(b) Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.

**3.** Section 151 provides in full:

In each judicial district, the bankruptcy judges in regular active service shall constitute a unit of the district court to be known as the bankruptcy court for that district. Each bankruptcy judge, as a judicial officer of the district court, may exercise the authority conferred under this chapter with respect to any action, suit, or proceeding and may preside alone and hold a regular or special session of the court, except as otherwise provided by law or by rule or order of the district court.
28 U.S.C. § 151 (Supp.1985).

**4.** Prior to the 1984 amendments, section 151 described the Bankruptcy Court as an *adjunct* to the District Court, suggesting a somewhat more independent relationship between the two courts.

(c)(1) Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

(2) Under timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction. Any decision to abstain made under this subsection is not reviewable by appeal or otherwise. This subsection shall not be construed to limit the applicability of the stay provided for by section 362 of title 11, United 'States Code, as such section applies to an action affecting the property of the estate in bankruptcy.

(d) The district court in which a case under title 11 is commenced or is pending shall have exclusive jurisdiction of all of the property, wherever located, of the debtor as of the commencement of such case, and of the estate.

28 U.S.C.A. § 1334 (Supp.1985). By the plain wording of section 1334(b), original but not exclusive Bankruptcy Court jurisdiction would extend to the present circumstances if Lyman Lumber's motion may properly be construed as a civil proceeding (1) arising under title 11, (2) arising in a case under title 11, or (3) related to a case under title 11.

In this instance, after considerable thought and due consideration of the interests of all parties concerned, I am satisfied that Lyman Lumber's motion "arises" in this bankruptcy case. My decision on this matter is grounded in the conclusion that the parties' lien disputes concern property which constitutes property of the estate over which this Court, in conjunction with the District Court, has exclusive jurisdiction.

■ Pursuant to 11 U.S.C. § 541, and with certain exceptions not herein applicable, this bankruptcy estate is comprised in part of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1) (1982). While the statutory language on its face clearly indicates that *all legal* interests are sufficient to classify property as property of the estate, the legislative history is additionally illuminating on this point. It provides in part as follows:

> Under paragraph (1) of subsection (a), the estate is comprised of all legal or equitable interest of the debtor in property, wherever located, as of the commencement of the case. The scope of this paragraph is broad. It includes all kinds of property, including tangible or intangible property, causes of action (see Bankruptcy Act section 70a(6)), and all other forms or property currently specified in section 70a of the Bankruptcy Act section 70a, [sic] as well as property recovered by the trustee under section 542 of proposed title 11, if the property recovered was merely out of the possession of the debtor, yet remained "property of the debtor." *The debtor's interest in property also includes "title" to property, which is an interest, just as are a possessory interest, or leasehold interest, for example.*

H.R. No. 595, 95th Cong., 1st Sess. 367–68 (1977); S.R. No. 989, 95th Cong., 2d Sess. 82–83 (1978), U.S.Code Cong. & Admin. News 1978, 5787, 5868, 5869, 6322–6324.

In light of the clear statutory language and unswerving legislative history, I find no alternative but to hold that prior to the sales free and clear the various properties at issue constituted property of the estate. At that time, the legal or equitable interests remaining in the estate included title to the property,[5] the right to notice con-

---

**5.** There can be no doubt that despite the overwhelming value of the liens encumbering the real property, such does not defeat the debtor's, and thus the estate's, legal ownership of such

cerning any action thereon, the right to pay off the underlying debts and thereby have the liens extinguished, and the right, however valueless, to receive any surplus generated from a sale of the properties. *See In re Alpa Corp.*, 11 B.R. 281, 287–88 (Bktcy.D.Utah 1981) (property of debtor levied upon and seized by IRS, but not sold, prepetition constitutes property of the estate despite substantial IRS lien on property—apparently even if such lien leaves debtor with no more than mere title in such property). *Cf. Missouri v. United States Bankruptcy Court*, 647 F.2d 768 (8th Cir. 1981), *cert. denied*, 454 U.S. 1162, 102 S.Ct. 1035, 71 L.Ed.2d 318 (1982) (debtors' possession and mere 2.3% ownership of grain at issue held sufficient to constitute property of the estate so as to invoke jurisdiction pursuant to 28 U.S.C. § 1471(e), the predecessor to section 1334(d)).

A strong argument can be made that, subsequent to the sales free and clear and the escrowing of the proceeds therefrom, there no longer existed any property of the estate under section 541(a)(1). Especially upon the conversion of this case to a chapter 7, such an argument appears quite compelling indeed. Whatever legal or equitable interest previously retained by the estate in the property was reduced by the sale to no more than bare legal title to the proceeds, which title now serves only as an insignificant and wholly valueless estate interest which will be entirely consumed upon a final determination of the validity and extent of liens which have attached to such proceeds. Such a minimal interest has compelled at least one court to exclude such from any characterization of property of the estate. *See In re McKinney*, 45 B.R. 790, 791–92 (Bktcy.W.D.Ky.1985); *but see In re Alpha Corp., supra* (indica-

tion that bare legal title may be enough to include property within section 541(a)(1)).

Under the facts of the present case, however, Congress has evinced a contrary intent. Section 541(a)(6) clearly provides that all of the escrowed proceeds of the sales are includable as property of the estate as such proceeds are proceeds "from property of the estate." 11 U.S.C. § 541(a)(6) (1982). This is so despite the fact that as a practical matter in this case the funds will ultimately be entirely distributed to the secured creditors. *Cf. Matter of Dias*, 24 B.R. 542 (Bktcy.D.Idaho 1982) (proceeds from milk sales includable as property of the estate under section 541(a)(6) even though under state law debtors have no remaining legal or equitable interest in such as a result of an absolute assignment to another).[6] While the specific legislative purpose behind 11 U.S.C. § 541(a)(6) is not altogether clear, that section's application to the present facts does preclude what might otherwise be an unreasonable result from a sale free and clear of liens. Such a sale, which serves to benefit all concerned, should not, simply by converting the form of property of the estate, have the effect of removing this Court's jurisdiction over that property or any lien disputes thereto.

■ Despite the estate's admittedly nominal legal interest in the escrowed proceeds, therefore, I must conclude that such interest is sufficient to invoke exclusive District Court jurisdiction, pursuant to 28 U.S.C. § 1334(d), over such proceeds. It follows from this determination that where, as here, parties dispute the validity, priority and extent of liens against property, any proceeding concerning such a dispute necessarily "arises" in a bankruptcy case when such a proceeding seeks only to resolve lien disputes over property of the bankruptcy estate.[7] While jurisdiction may

---

property. The law is clear in this state that a lien upon land is no more than a hold or claim thereon as security for some debt or charge of the lienor. It is in no sense an estate or interest in the land. *In re Gau*, 230 Minn. 235, 41 N.W.2d 444 (1950); *Donohue v. Ladd*, 31 Minn. 244, 17 N.W. 381 (1883).

6. It should be noted that the courts in this district have repeatedly held that similar milk assignments are avoidable under 11 U.S.C.

§ 552(a). *See In re Serbus*, Bky. 4–84–1472, Adv. 4–84–197 (Bktcy.D.Minn. Feb. 15, 1985); *In re Quaal*, 40 B.R. 619, 620–21 (Bktcy.D.Minn. 1984).

7. A contrary determination on this issue would have minimal impact upon the ultimate question of this Court's jurisdiction as there can be little, if any, doubt that a lien dispute over property of the estate is at the very least a matter "related" to a bankruptcy case. In fact,

exist for this Court to hear the matter presently before it, my power as a Bankruptcy Judge to independently determine such matter is wholly dependent upon the extent to which the matter has been referred from the District Court as well as upon the powers granted Bankruptcy Judge pursuant to 28 U.S.C. § 157.

## B. *Abstention*

■ Based upon my decision that the present matter "arises" in this Bankruptcy case, it is clear that abstention is not required pursuant to 28 U.S.C. § 1334(c)(2). However, even if this proceeding was deemed only to be "related" to this Bankruptcy case, I am not convinced that section 1334(c)(2) would apply. Significant delays have ensued in which all lien claimants have been substantially precluded from pursuing their claims in any forum. Moreover, interest on such claims continues to accrue thereby diminishing the amount, if any, which junior lien claimants shall receive. Consequently, I do not believe these matters can be timely adjudicated in a state forum—especially in light of the comparably light calendar and availability of early hearing dates in this Court. For the same reasons, I believe abstention pursuant to section 1334(c)(1) would be similarly inappropriate.

## C. *Powers of the Bankruptcy Judge*

■ On July 27, 1984, pursuant to 28 U.S.C. § 157(a),[8] the District Court for the District of Minnesota provided as follows:

IT IS ORDERED that all bankruptcy cases and bankruptcy proceedings arising under the Bankruptcy Act and under Title 11 of the U.S.Code or arising in or related to bankruptcy cases now or hereafter pending in the District of Minnesota are hereby referred to the Bankruptcy Judges for the District of Minnesota; all

in accordance with the provisions made and provided for in the Bankruptcy Amendments and Federal Judgeship Act of 1984 and,

IT IS FURTHER ORDERED that the Bankruptcy Judges for the District of Minnesota are directed to accept the jurisdiction conferred upon them by the Bankruptcy Amendments and Federal Judgeship Act of 1984 and to perform their duties and responsibility under said Act and the Bankruptcy Reform Act of 1978.

Order Referring Bankruptcy Cases and Proceedings to Bankruptcy Judges (D.Minn. July 27, 1984). By such Order of Reference, the District Court clearly granted the Bankruptcy Judges in this district the requisite power to hear and determine all "core proceedings" arising in a bankruptcy case to the fullest extent permitted under 28 U.S.C. § 157(b).

Although no definition of "core proceeding" is provided within the jurisdictional sections of the 1984 amendments, Congress did furnish an illustrative list of matters which are included within the boundaries of this otherwise amorphous grant of power. Explicitly included within this framework are "determinations of the validity, extent, or priority of liens." 28 U.S.C.A. § 157(b)(2)(K) (Supp.1985). While such a category would appear to grant a Bankruptcy Judge the power to resolve lien disputes wherever or whenever they might arise, the more reasonable reading of this section would yield an interpretation that comports with the statutory grant of power under section 157(b)(1) and avoids the morass that consumed the previous jurisdictional provisions. *See Northern Pipeline Construction Co. v. Marathon Pipeline Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). As such, it is clear that section 157(b)(2)(K) concerns lien disputes only

such a determination serves as the basis for the arguments proffered by the construction mortgagees. In either event, jurisdiction would exist. However, the extent to which such a matter could be heard and determined by a Bankruptcy Judge presents questions which will be later addressed.

**8.** Section 157(a) provides:

Each district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district.

28 U.S.C.A. § 157(a) (Supp.1985).

with regard to property of the estate. *See In re Dr. C. Huff Co., Inc.*, 44 B.R. 129, 134 (Bktcy.W.D.Ky.1984). Where property of the estate is not involved, no proceeding exists in which a Bankruptcy Judge may hear and, absent consent of the parties, determine the matters at issue therein. *In re McKinney*, 45 B.R. 790, 791–92 (Bktcy. W.D.Ky.1985); [9] *In re Dr. C. Huff Co., Inc., supra.* As I have already concluded that property of the estate is in fact herein involved, I am of the opinion that this matter constitutes a core proceeding which I have the power to hear and determine.

■ Even if a core proceeding was not presently before me, I believe the facts properly demonstrate the requisite consent of the parties pursuant to 28 U.S.C. § 157(c)(2). That section provides:

> Notwithstanding the provisions of paragraph (1) of this subsection, the district court, with the consent of all the parties to the proceeding, may refer a proceeding related to a case under title 11 to a bankruptcy judge to hear and determine and to enter appropriate orders and judgments, subject to review under section 158 of this title.

28 U.S.C.A. § 157(c)(2) (Supp.1985).[10] By virtue of all parties' notice and failure to contest through motion for reconsideration or appeal this Court's December 29, 1983, February 21, 1984, and May 9, 1984, Orders providing that lien disputes would be resolved by the Bankruptcy Court, they have by implication demonstrated their willingness to so appear. Significantly, subsequent to the enactment of the new jurisdictional provisions, many of the parties, including the construction mortgagees, appeared in this Court to present for my determination test cases concerning lien disputes over four of the subject properties. No jurisdictional objections were raised at any time during such test case proceedings. While an appeal was taken by certain parties, including the construction mortgagees, from my November 30, 1984, Order with regard to the test cases, the record is void of any evidence that jurisdictional objections have been raised on such appeal.[11]

■ While the construction mortgagees might argue that they should be entitled to withdraw their consent at any time, I do not share that view. Once consent has been freely given under section 157(c)(2), a party should not be entitled, once dissatisfied with the results obtained thereby, to seek more favorable review elsewhere. I find it difficult to imagine that the construction mortgagees would question either this Court's jurisdiction or the powers granted me pursuant to section 157 had the outcome from the test cases been somewhat different. Congress clearly could not

---

**9.** The *McKinney* decision clearly enunciates the rule that property of the estate must be at the heart of any section 157(b)(2) lien dispute; it is not absolutely clear, though, on what basis the court decided that property of the estate was not therein involved. The court described the dispute as one "between a properly perfected secured creditor and a landowner claiming under a state landlord's lien statute, to the proceeds of a tobacco crop grown and sold by a tenant farmer who later declared bankruptcy." It further characterized the issue as exclusively between those two parties—neither the debtor nor the trustee had any concern whatsoever in the outcome. Whatever the court's rationale in that case, however, it is clear that the facts therein would not permit application of 11 U.S.C. § 541(a)(6) to draw the sale proceeds into the estate as has been done in the present case. In *McKinney,* the sale yielding proceeds occurred prior to the bankruptcy filing. Therefore, the court was left only with the question of whether such proceeds were includable as property of the estate under section 541(a)(1).

**10.** Paragraph (1) of section 157(c) provides as follows:

> A bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11. In such proceeding, the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected.

28 U.S.C.A. § 157(c)(1) (Supp.1985).

**11.** As it is unnecessary at this time, I suggest no opinion whatsoever as to what possible relevancy a jurisdictional objection on appeal would have on the issue of consent when no such objection was raised prior to the original hearing.

have intended to condone limited forum shopping by dissatisfied parties through the enactment of section 157(c)(2).

IT IS THEREFORE HEREBY OR-DERED that this Court has the requisite jurisdiction and power to hear and determine the matter presently before it by virtue of the motion filed on behalf of Lyman Lumber. A Scheduling Order shall be forthcoming by which the procedures for hearing all lien disputes regarding all escrowed funds will be established. Resolution of any additional objections to this Court's jurisdiction or my power to hear and determine these matters shall await the formal commencement of proceedings concerning such matters.