**GRAVEL AND SHEA, Appellant,**

v.

**VERMONT NATIONAL BANK, Appellee.**

Civ. A. No. 2:92–CV–174.

United States District Court,
D. Vermont.

Oct. 27, 1993.

Norman C. Williams, Gravel & Shea, Burlington, VT, for appellant.

Frank E. Talbott, Wilson, Powell, Lang & Faris, Burlington, VT, for appellee.

## OPINION AND ORDER

PARKER, Chief Judge.

This case involves a $90,000 escrow account to which each party claims a superior interest.[1] In its Findings and Conclusions of Law of September 4, 1991 and in an Order of February 5, 1991, the Bankruptcy Court determined that Appellee Vermont National Bank ("VNB") had a first priority lien in the escrow fund. On March 5, 1992, Appellant, Gravel and Shea, a law firm, filed its objections to the Bankruptcy Court's findings and order and sought *de novo* review of the Bankruptcy Court's determination. On May 19, 1992, the Bankruptcy Court granted VNB's motion to strike Gravel and Shea's objections. In this order, the Bankruptcy Court determined that Gravel and Shea had expressly and impliedly consented to have its case decided as a core proceeding, and therefore review must be on the record rather than *de novo*. Gravel and Shea appeals the May 19, 1992 Bankruptcy Court order, arguing that it did not consent to the Bankruptcy Court hearing this matter as a core proceeding, that the matter is in fact a non-core proceeding, and that review should be *de novo*. For the following reasons, the Bankruptcy Court's order is affirmed.

## BACKGROUND AND PROCEDURAL HISTORY

The record on appeal reveals the following facts to which the parties substantially agree.

Gravel and Shea represented Chatham Precision, Inc. ("CPI"), the debtor below, in a law suit against various third parties (hereinafter "Wheaton litigation"). Vermont National Bank had a secured interest in any proceeds from this law suit. On August 13, 1990, while the Wheaton litigation was still pending, CPI filed for bankruptcy under Chapter 11. While CPI's bankruptcy petition was pending, the parties to the suit were able to reach settlement. In October 1990, the Bankruptcy Court approved this settlement, and pursuant to a stipulation between CPI, VNB, Gravel and Shea, and the bankruptcy trustee, the Bankruptcy Court ordered the parties to place $145,000 from the settlement in an escrow account. In accord with the agreement, Gravel and Shea and VNB paid $55,000 to CPI, leaving $90,000 in the escrow fund. The agreement also specified that Gravel and Shea, VNB, or CPI could bring an adversary proceeding in the Bankruptcy Court to determine lien priority in the fund.

Pursuant to this agreement, VNB brought an adversary proceeding against Gravel and Shea and CPI. CPI has not actively opposed either party throughout these proceedings. Gravel and Shea, on the other hand, actively opposed VNB, claiming that it had an attorney's lien on the escrow fund. The Bankruptcy Court held that Gravel and Shea had a lien of $87,000 on the fund, but that it had waived its lien by failing to notify VNB of its intent to assert the lien. The Court therefore concluded that VNB had first priority to the $90,000 held in escrow.

From this determination, Gravel and Shea has attempted to perfect an appeal through a number of different procedural maneuvers. In the instant action, Gravel and Shea attempts to appeal pursuant to Bankruptcy Rule 9033, which applies to non-core proceedings only. Bank.Rule 9033, 11 U.S.C. (Supp.1993). The Bankruptcy Court, however, found that Gravel and Shea expressly consented to the Bankruptcy Court hearing the case as a core proceeding because Gravel

---

1. The dispute over this sum has spawned three different appeals by Gravel and Shea to this Court. In all three appeals Gravel and Shea attempts to secure review of a decision of the Bankruptcy Court awarding VNB the escrow funds. The other two appeals have been consoli- dated by Order of this Court. *Gravel and Shea v. Vermont National Bank,* 150 B.R. 889 (D.Vt. 1993) (granting in part and denying in part Motion to Consolidate). The consolidated appeals are discussed in a companion opinion also issued today.

and Shea admitted in their answer that VNB's action was core. Alternatively, the Bankruptcy Court found that Gravel and Shea had impliedly consented to have the matter heard as a core proceeding because it raised the core/non-core issue only after the Bankruptcy Court made its final findings of fact and conclusions of law. The Bankruptcy Court therefore concluded that its findings and conclusions of law constituted a final judgment that was subject to appeal on the record under 28 U.S.C. § 158(a), and not Bankruptcy Rule 9033, which provides for *de novo* review. The Bankruptcy Court therefore ordered that Gravel and Shea's objection be stricken. Gravel and Shea appeals from this determination, arguing that the action below was a non-core proceeding, and that it did not consent, either expressly or impliedly, to the Bankruptcy Court hearing the matter as a core proceeding.

## DISCUSSION

### I. Standard of Review

Findings of fact by a bankruptcy court in proceedings within its full jurisdiction are reviewable only for clear error. *In re Manville Forest Products Corp.*, 896 F.2d 1384, 1388 (2d Cir.1990). Conclusions of law, however, are reviewed *de novo*. *Id.* Whether a matter is a core proceeding is a legal issue that is subject to *de novo* review. *In re Ben Cooper, Inc.*, 896 F.2d 1394, 1397 (2d Cir. 1990).

### II. The Bankruptcy Court's Jurisdiction

Jurisdiction of a bankruptcy court over core proceedings is set forth in 28 U.S.C. § 157(b)(1), which provides that "bankruptcy judges may hear and determine ... all core proceedings arising under title 11 ... and may enter appropriate orders and judgments, subject to review under section 158 of this title." In § 158, Congress provided for review of bankruptcy court orders by the district courts in the "same manner as appeals in civil proceedings generally are taken to the courts of appeals from the district courts." 28 U.S.C. §§ 158(a), (c). In contrast, a non-core proceeding does not arise under title 11, but "is otherwise related to a case under title 11." 28 U.S.C. § 157(c)(1).

In a non-core proceeding, the bankruptcy judge may not enter final findings of fact and conclusions of law. The district court, rather than the bankruptcy court, is empowered to enter final judgment or orders in a non-core proceeding, but only after reviewing *de novo* those matters to which a party has specifically objected. *Id.;* Bankr.Rule 9033, 11 U.S.C.A. (Supp.1993).

In every case, "[t]he bankruptcy judge shall determine, on the judge's own motion or on the timely motion of a party, whether a proceeding is a core proceeding ... or is a proceeding that is otherwise related to a case under title 11." 28 U.S.C. § 157(b)(3). In this case, Bankruptcy Judge Conrad did not determine explicitly whether this matter was core and neither party moved the court to make such a determination.

Federal courts are split as to whether the lack of an explicit finding under § 157(b)(3) deprives the bankruptcy court of jurisdiction, and the Second Circuit has not considered the issue. Some courts hold that the Bankruptcy Judge's failure to make a § 157(b)(3) finding deprives the bankruptcy court of jurisdiction, even where the parties fail to timely raise the issue. *In re Wefco*, 97 B.R. 749, 750–51 (E.D.N.Y.1989) (failure of bankruptcy judge to make § 157(b)(3) finding was not harmless error and remanded for such a determination); *In re Marill Alarm Systems, Inc.*, 81 B.R. 119, 122 (S.D.Fla. 1987), *aff'd sub nom. Marill Alarm Sys. v. Equity Funding*, 861 F.2d 725 (11th Cir. 1988) (bankruptcy court's final judgment must be invalidated where bankruptcy judge fails to make § 157(b)(3) finding); *In re Nell*, 71 B.R. 305, 310 (D.Utah 1987) (remand proper where record is unclear as to whether the proceeding is core or non-core because the bankruptcy judge failed to make a § 157(b)(3) finding). Other courts hold that a party's failure to timely request a § 157(b)(3) finding waives any objection to the absence of such a finding. *In re Johnson*, 960 F.2d 396, 400 (4th Cir.1992) (parties waived explicit § 157(b)(3) determination where the parties were aware that the bankruptcy court considered the proceeding core); *In re Rath Packing Co.*, 75 B.R. 137, 138

(N.D.Iowa 1987), *aff'd sub nom. Rath Packing Co. v. United Food,* 860 F.2d 1086 (8th Cir.1988) (failure to raise the issue before the bankruptcy judge constitutes waiver because such a motion must be timely); *Rainey v. International Harvester Credit Corp.,* 59 B.R. 987, 989–90 (N.D.Ill.1986) (same).

I am persuaded that the latter interpretation of § 157(b)(3) is the better one. The provision requires that a party's motion be timely and therefore a party's failure to raise the issue before the bankruptcy judge's final determination waives the right to have an explicit § 157(b)(3) finding made by the bankruptcy judge and also waives the right to raise the absence of such a finding at a later stage of the proceedings.

■ In this case, Gravel and Shea did not make a timely motion before the Bankruptcy Court to determine the nature of the proceedings, and therefore it waived its right to have the Bankruptcy Court make a § 157(b)(3) finding. Judge Conrad issued findings of fact and conclusions of law on September 4, 1991. On February 5, 1993, the Bankruptcy Court granted in part and denied in part Gravel and Shea's Motion for Reconsideration and Motion to Amend Findings of Fact. Gravel and Shea even filed a Notice of Appeal as if the proceeding were core. On March 5, 1993, however, Gravel and Shea filed its Objection to Proposed Findings of Fact and Conclusions of Law under Rule 9033, in essence seeking *de novo* review of the Bankruptcy Court's findings as if a non-core proceeding were involved. Appellee, VNB, in its Motion to Strike finally raised the core/non-core issue, arguing that the proceeding was core, and that Gravel and Shea, therefore, was not entitled to *de novo* review under Bankruptcy Rule 9033. Thus, throughout the litigation before the Bankruptcy Court, Gravel and Shea never moved the Court to determine whether the proceeding was core or non-core, but only raised the issue indirectly by attempting to secure *de novo* review of the Bankruptcy Court's Order.

■ Furthermore, because Gravel and Shea admitted in its answer that the matter was a core proceeding, and because Bankruptcy Judge Conrad found that this amount-ed to consent, a § 157(b)(3) finding would have served no purpose. *See In re Men's Sportswear, Inc.,* 834 F.2d 1134, 1137 (2d Cir.1987) (no need to determine whether a matter was a core proceeding when the parties had consented to the bankruptcy court's jurisdiction). Under such circumstances, failure of the Bankruptcy Judge to determine whether the matter is a core proceeding, standing alone, does not act to deprive the Bankruptcy Court of jurisdiction.

Whether Gravel and Shea's failure to raise the issue in a timely manner before the Bankruptcy Court amounts to consent to core jurisdiction is a different question. As discussed above, bankruptcy judges may hear a non-core related proceeding, but they may not enter final orders. Rather, they are usually required to submit proposed findings and conclusions of law, which are then subject to *de novo* review by the district court. Under § 157(c)(2) a bankruptcy judge may enter final orders in a non-core related matter which has been referred by the district court if it has the consent of all the parties.

■ The Second Circuit has decided that in appropriate circumstances consent can be implied from a party's failure to make a timely objection. *In re Men's Sportswear, Inc.,* 834 F.2d 1134, 1137–38 (2d Cir.1987). In *Sportswear,* the court held that a party's failure to object to the Bankruptcy Judge's "assumption of core jurisdiction at any point in [the] extensive proceedings before the bankruptcy court and the further failure to object to any part of the appeal process in the district court constitutes consent to the final adjudication of the controversy before the bankruptcy court." *Id.* at 1137–38.

The *Sportswear* court, however, cautioned "that a court should not lightly infer from a litigant's conduct consent to have private state-created rights adjudicated by a non-Article III bankruptcy judge." *Id.* at 1138. The court reasoned, "to do so would violate the spirit of *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), which emphasizes that the power to adjudicate private rights, such as the right to recover contract damages, cannot be lodged in a court lacking

'the essential attributes of the judicial power.'" *Id.* at 1138 (quoting *Marathon,* 458 U.S. at 87, 102 S.Ct. at 2880).

■ In its Answer to VNB's Complaint, Gravel and Shea admitted that the proceeding was core. The Bankruptcy Judge below found that Gravel and Shea's admission that the proceeding was core amounted to explicit consent. One court has held that such an admission "accords irrevocable consent to a bankruptcy court to determine the proceeding, even if it is non-core." *In re St. Mary Hosp.,* 117 B.R. 125, 131 (Bankr.E.D.Pa. 1990); *see also In re 641 Associates, Ltd.,* 140 B.R. 619 (Bankr.E.D.Pa.1992). Such an admission has been deemed express consent to the bankruptcy court's final determination of the matter. *In re Grigsby,* 119 B.R. 479, 484 (Bankr.E.D.Pa.1990).[2]

In this case, however, there is no need to base a decision on Gravel and Shea's admission in its answer because the totality of Gravel and Shea's actions throughout this action indicate that it consented to the Bankruptcy Court making a final determination. In addition to its answer, in which it admitted the proceeding was core, Gravel and Shea had several opportunities to raise this issue. It could have raised the issue at any time during the bankruptcy proceeding through a motion. It did not raise the issue at the hearing on the merits before Bankruptcy Judge Conrad. It also could have raised the issue after the Bankruptcy Court issued its final conclusions of law and findings of fact which implied that the Bankruptcy Court was proceeding as if the matter was a core proceeding. Moreover, although Gravel and Shea challenged many of the Bankruptcy Court's findings and conclusions of law through a post trial motion, it did not raise the core/non-core issue. Finally, Gravel and Shea filed a notice of appeal as if the matter were core. Only after Gravel and

Shea had lost on the merits, and after its motion for reconsideration largely failed to reverse its fortunes, Gravel and Shea attempted to appeal as if the matter was non-core. Even then, however, it never requested that the Bankruptcy Court make a § 157(b)(3) finding. Under these circumstances, Gravel and Shea has consented to the Bankruptcy Court's core jurisdiction. By admitting that the matter was core and by failing to raise the issue until after it had lost on the merits and after its motion to reconsider had been decided, Gravel and Shea impliedly consented to the Bankruptcy Court entering a final determination. *See Rainey,* 59 B.R. at 990 (by bringing a complaint seeking affirmative relief and failing to timely object, party consented to Bankruptcy Court's final determination of the matter). Although Gravel and Shea has raised the issue earlier than the losing party in *Sportswear,* the fact that Gravel and Shea did not raise the issue until after it received an unfavorable judgement from the Bankruptcy Court and then filed an appeal are determinative. *See In re Southern Indus. Banking Corp.,* 809 F.2d 329, 331 (6th Cir.1987) (finding implied consent under the same circumstances). The Bankruptcy Court's determination that Gravel and Shea consented to the Bankruptcy Court's final determination of the matter is therefore affirmed.

■ Even if this Court were to assume that Gravel and Shea did not consent, this action is a core proceeding and the Bankruptcy Court therefore had authority to enter a final order. In considering this question, the constitutional limitations imposed on the bankruptcy court's jurisdiction in *Northern Pipeline Constr. Co. v. Marathon Pipeline Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), must be recognized. In *Marathon,* the Court held that Congress

---

2. Whether such an approach would be upheld in this circuit is unclear, especially in light of the Second Circuit's recent statement that "an 'implied' waiver would not adequately protect the constitutional right to be heard by an article III judge, *at least at the threshold of a party's participation in a case." New York Chinese TV Programs, Inc. v. U.E. Enterprises, Inc.,* 996 F.2d 21, 24 (2d Cir.1993) (emphasis added). Although *Chinese TV* refers to United States magistrate judges, magistrate judges and bankruptcy judges are both non-Article III judges. Because the answer initiates a defendant's participation in a case, any consent found therein must be explicit under *Chinese TV.* An admission that a proceeding is core does not appear to be explicit consent to enter a final order because something more must be implied into such an admission in order to derive consent to enter a final judgment in a non-core proceeding.

could not grant broad jurisdiction to non-Article III courts. The Court determined that a bankruptcy court can only hear matters that arise under Title 11. Congress responded by legislating that the bankruptcy courts may issue dispositive orders in core proceedings only. 28 U.S.C. § 157(b). The Bankruptcy Court's authority to enter a final order will therefore be upheld if the action to determine who had a superior interest in the escrow is a core proceeding under § 157(b).[3]

■ In § 157(b)(2), Congress provided a non-exhaustive list of core proceedings, including "determinations of the validity, extent, or priority of liens." In addition, § 157(b)(3) provides that "[a] determination that a proceeding is not a core proceeding shall not be made on the basis that its resolution may be affected by State law." Therefore, simply because VNB and Gravel and Shea's claims to the escrow fund were resolved in accordance with state law does not preclude a holding that the adversary proceeding is core. *In re Manville Forest Products Corp.*, 896 F.2d 1384, 1389 (2d Cir.1990) (citation omitted). Rather, "[t]he relevant inquiry is whether the nature of this adversary proceeding ... falls within the core of federal bankruptcy power." *Id.* (citing *In re Wood*, 825 F.2d 90, 97 (5th Cir.1987) (Wisdom, J.); *In re Arnold Print Works, Inc.*, 815 F.2d 165, 169 (1st Cir.1987) (Breyer, J.)).

In addition the Second Circuit has held that "the bankruptcy jurisdiction [is] to be construed as broadly as possible within the constitutional constraints of *Marathon*." *In re Ben Cooper, Inc.*, 896 F.2d 1394, 1398 (2d Cir.1990). The *Cooper* court agreed with the First Circuit's reading of the legislative history when it stated, "[t]he sponsors repeatedly said that 95 percent of the proceedings brought before bankruptcy judges would be core proceedings." *Id.* at 1398 (quoting *Print Works*, 815 F.2d at 168).

The adversary proceeding below involved a dispute to an escrow fund to which both parties to this appeal claimed a lien. The Bankruptcy Court's determination of the issue focused on the validity of both party's lien—particularly whether Gravel and Shea had waived its lien. Thus, this action would appear to fall within the literal language of § 157(b)(2)(K) which states that core proceedings include "determinations of the validity, extent or priority of liens."[4] *See Rainey*, 59 B.R. at 989.

Gravel and Shea, however, asserts that the dispute to the fund was only between two creditors of the debtor and that the debtor was not involved in this adversary proceeding. It also argues that the determination of the priority and validity of liens is based upon state law and that absent the debtor's bankruptcy, the case could have been brought in state court. From this, Gravel and Shea concludes that the matter is merely related to a bankruptcy proceeding and is therefore non-core.

In *In re Xonics, Inc.*, 813 F.2d 127 (7th Cir.1987), there was a dispute between two creditors to a certain pool of money that the debtor had abandoned. The court held that because the debtor had abandoned the property, the Bankruptcy Court had only non-core jurisdiction, if it had jurisdiction at all. *Id.* at 132. In so holding, the court was careful to distinguish the situation where the debtor did not disclaim its interest in the estate, because in such a case the bankruptcy court may apportion the property among creditors "only after identifying the 'property' of the estate." *Id.* at 131. The court also stated that "resolving competing claims to property that belonged to the debtor when it filed a petition in bankruptcy is one of the

---

3. Gravel and Shea argues that the core/non-core analysis is essentially an analysis of whether the Bankruptcy Court has subject matter jurisdiction. This is simply untrue. *Marathon's* concern was the personal right to have private state-created causes of action adjudicated by an Article III judge. Unlike subject matter jurisdiction, this is a personal right which may be waived. As part of the district court, a bankruptcy court has subject matter jurisdiction in a core proceeding as well as a non-core proceeding.

4. Vermont National Bank also characterized this action as an action to turn over property of the estate, which is also included in the list of core proceedings. 28 U.S.C. § 157(b)(2)(E). In essence, VNB's claim requested the Bankruptcy Court to turn the fund over to VNB, which was still property of the estate. Therefore, the action below also fits into this example of a core proceeding.

central functions of bankruptcy law. [Citation omitted]. The only reason why this particular dispute may be treated otherwise is the debtor's 'abandonment' of its claim to these receivables." *Id.* at 131–32.

The record below in the instant case indicates that the escrow fund had not been abandoned by debtor CPI. The debtor, however, did not actively dispute the claims of either VNB or Gravel and Shea to the fund. Nevertheless, there is no question that the property in issue belonged to the estate. Under 11 U.S.C. § 541, with certain exceptions not applicable here, "all legal and equitable interests of the debtor in property as of the commencement of the case" comprise the estate. In the Second Circuit, it is well-settled law that the estate includes causes of action. *Mitchell Excavators ex rel. Mitchell v. Mitchell,* 734 F.2d 129, 131 (2d Cir.1984).

There also appears to be no dispute that CPI's cause of action arose before it filed its petition for bankruptcy.[5] The cause of action was therefore property of the estate when the case was settled.

The settlement agreement, which was confirmed by the Bankruptcy Court, did not alter this fact. The parties agreed that $55,000 of the $145,000 settlement would be paid immediately to CPI, thus acknowledging CPI's interest in the proceeds from the settlement. The agreement also created the $90,000 settlement fund, and provided that if Gravel and Shea, VNB, and CPI could not reach agreement, then anyone of them could bring an adversary proceeding in the Bankruptcy Court "*to determine lien priority and ownership* to the $90,000 fund." Moreover, 11 U.S.C. § 541(a)(6) provides that "[p]roceeds from property of the estate" is part of the estate. Such escrow proceeds are considered property of the estate. *In re Zachman Homes, Inc.,* 83 B.R. 633, 638 (D.Minn. Bankr.1985). Therefore, the escrow funds were property of the estate that CPI had not

formally abandoned when VNB initiated its action.

When VNB brought an adversary proceeding to determine ownership of the fund, CPI did not make a claim to it or actively oppose either party. At least two courts have found that despite the debtor's realistic expectation that it would not receive any benefit from the escrow property, such an action is a core proceeding. *In re Chicago Cement Company,* No. 89–C–5154, 1990 WL 168950, at *6, 1990 U.S.Dist. LEXIS 14114, at *17 (N.D.Ill. Oct. 24, 1990) (dispute over the proceeds from the sale of cement was core, even though the creditor was entitled to the debtor's full share in the proceeds because the court had to determine debtor's rights in order to find what the creditor was entitled to); *Zachman Homes,* 83 B.R. at 629–40.

In *Zachman Homes* the court ordered a sale of real estate free and clear of all liens and created an escrow fund from the proceeds. It was clear that the "bankruptcy estate had no financial interest whatsoever in the [escrow] funds," because the aggregate claims against the fund greatly exceeded the total amount of the fund. *Zachman Homes,* 83 B.R. at 635–36. Nevertheless, the court determined that the fund was still the property of the estate. *Id.* at 638. Because the action before the court was to determine the validity and priority of liens in the escrow fund, the court found that the proceeding was core, even though it was clear to all parties involved that the debtor would not receive any money from the fund. *Id.* at 639–40.

This case is analogous to *Zachman Homes.* As determined above, the escrow fund was still property of the estate, even though it may have been clear that the debtor would not receive any money from the fund. Because the dispute involved the validity and priority of liens in the fund and it is property of the estate, it is therefore a core proceeding under 28 U.S.C. § 157(b)(2)(K).[6]

---

5. The settlement agreement shows that the Wheaton litigation was commenced in 1989 and that CPI's petition for reorganization was filed with the Bankruptcy Court on August 13, 1990. (Record at tab 2, at 1–2).

6. This could also be considered a "proceeding[] affecting the liquidation of the assets of the estate," which is a core proceeding under 28 U.S.C. § 157(b)(2)(O). The escrow was initially set up so that the debtor's various legal claims could be liquidated. The liquidation and the escrow fund were necessary for the benefit of the

In such a case, the bankruptcy court is first required to find that the property in question is property of the estate, that the liens asserted by the various creditors are valid, the extent of those liens, and the priority of the liens. Because the court must determine that the property is part of the estate, it is a matter that can only arise in bankruptcy and therefore it is said to be part of the bankruptcy court's core jurisdiction. As the court in *Xonics* summarized, "resolving competing claims to property that belonged to the debtor when it filed a petition in bankruptcy is one of the central functions of bankruptcy law." 813 F.2d at 131–32. Vermont National Bank's action to determine the validity and priority of liens is therefore a core proceeding and the Bankruptcy Court had authority to enter final orders, findings of fact, and conclusions of law.

Because the matter is core, any appeal must be pursuant to 28 U.S.C. § 158 and Bankruptcy Rule 8002, not 28 U.S.C. § 157 and Bankruptcy Rule 9033, which provide for *de novo* review of a non-core proceeding. The Bankruptcy Court's Order striking Gravel and Shea's Objection to Proposed Findings and Conclusions and Request for De Novo Review is therefore affirmed.

### CONCLUSION

For the foregoing reasons, the Bankruptcy Court's Order is AFFIRMED. Gravel and Shea consented to the Bankruptcy Court entering final findings of fact and conclusions of law as if a core proceeding was involved, and in any event, the underlying proceeding was core and the Bankruptcy Court had authority to enter final orders. An appeal via Bankruptcy Rule 9033, providing for *de novo* review is therefore not authorized.

estate and the creditors. Vermont National Bank's subsequent action can be viewed as a continuation of the liquidation process and there-fore a core proceeding. *In re Octagon Roofing,* 141 B.R. 968, 979 (Bankr.N.D.Ill.1992).