In re KELTON MOTORS, INC.

Gleb GLINKA, Trustee of the Estate of Kelton Motors, Inc.

v.

BANK OF VERMONT.

Civ. No. 2:95CV71.

United States District Court, D. Vermont.

Oct. 18, 1995.

John J. Kennelly, Rutland, VT, for appellant.

Philip D. Saxer, Burlington, VT, for appellee.

## MEMORANDUM OF DECISION

MURTHA, Chief Judge.

The instant dispute arises from check-kiting activities undertaken by Carl E. Kelton under the guise of several related corporations, including the debtor, Kelton Motors, Inc. The trustee of the bankruptcy estate of Kelton Motors, Inc. has appealed from the Bankruptcy Court's ruling that money Kelton Motors secured from Lyndonville Savings Bank to pay an outstanding debt to the Bank of Vermont did not constitute a preferential transfer. In its cross-appeal, the Bank of Vermont argues as an alternative ground to affirm that the Bankruptcy Court correctly determined that the loan proceeds loan were earmarked for the Bank of Vermont and therefore were not property of the debtor's estate. For the reasons set forth below, the judgment of the Bankruptcy Court is AFFIRMED.

### I. Background

The Bankruptcy Court's finding that there was no preferential transfer of the debtor's property in this matter constitutes a determination in a core proceeding under 28 U.S.C. §§ 157(b)(1) and (b)(2)(F). Pursuant to 28 U.S.C. § 158(a)(1), "[t]he district courts of the United States shall have jurisdiction to hear appeals ... from final judgments ... of bankruptcy judges entered in cases and proceedings referred to bankruptcy judges under section 157...."

■■ A district court will not disturb a bankruptcy court's findings of fact unless clearly erroneous. *In re Parrotte*, 22 F.3d 472, 474 (2d Cir.1994). However, legal determinations are subject to *de novo* review. *Id.; accord Gravel and Shea v. Vermont National Bank*, 162 B.R. 961, 964 (D.Vt.1993).

The record supports the following findings of the Bankruptcy Court. *See generally* Transcript of December 11, 1991 Hearing on Motion for Summary Judgment (Record at 12) at p. 6 *et seq.;* Memorandum of Decision on Renewed Motion for Summary Judgment (Record at 25) (hereinafter "Ruling on Renewed Motion") at 2–7. On July 26, 1988, the Bank of Vermont filed a complaint in Vermont Superior Court alleging account number 04407615 was overdrawn by $3,679,427.18 and that Carl E. Kelton had used the account to deposit and clear funds payable to other corporate entities related to the debtor. The complaint named Carl Kelton, Kelton

Motors, and various other related individuals and corporations.

Carl Kelton rallied friends and relatives to secure funds necessary to reimburse Bank of Vermont. On or about July 28, 1988, Alfred and Carol Kelton executed the first $ 1.5 million promissory note in favor of Lyndonville Savings Bank (hereinafter the "Kelton Note"). This First Note was secured by, *inter alia,* a blanket chattel mortgage on the property of the debtor and its related entities, and by mortgages on certain real property.

On or about July 29, 1988, Peter, Raymond and Janice Jasmin executed a second $1.5 million promissory note in favor of Lyndonville Savings Bank (hereinafter the "Jasmin Note"). Unlike the Kelton Note, the Jasmin Note was not guaranteed by Kelton Motors. Instead, the Jasmin Note was secured by a commercial mortgage on certain commercial mortgages on property owned or leased by the Jasmins. The Jasmins authorized Lyndonville Savings Bank to pay the proceeds of the loan "as directed by Carl E. Kelton, Sr."

On August 1, 1988, the Bank of Vermont agreed in writing that, in return for debtor's payment of the overdraft amount and attendant expenses, the Bank would withdraw its lawsuit against Kelton Motors. The agreement called for a total payment of $2,948,-255.52.

Also on August 1, 1988, Lyndonville Savings Bank issued two checks totalling $2,948,-255.52. The checks were made payable to Kelton Motors, Inc. At the closing, Carl Kelton endorsed the checks as the debtor's president and handed them to Lyndonville Savings Bank's attorney. He, in turn, handed the checks to the Bank of Vermont. Accordingly, despite the fact that these checks were made payable to the debtor, it is clear that these loans were specifically made for the purpose of paying the Bank of Vermont; that Lyndonville Savings Bank retained control over the funds until they were physically handed to Bank of Vermont; and that, at no time was the debtor at liberty to use the funds in any way it wished.

On August 27, 1988, creditors filed an involuntary petition against the debtor in the United States Bankruptcy Court for the District of Vermont. Thereafter, the case was converted into a voluntary bankruptcy under chapter 11, and ultimately into a case under chapter 7.

On March 3, 1990, the trustee filed the instant adversary proceeding, claiming that the aforementioned payment to Bank of Vermont constituted either a fraudulent or preferential transfer. On April 2, 1993, the Bankruptcy Court issued its Memorandum of Decision on the Bank of Vermont's Renewed Motion for Summary Judgment. In that motion, the Bank of Vermont presented the court with two main issues: (1) Whether the judicially-created "earmarking doctrine" remains viable; and (2) whether the earmarking doctrine provides a defense to a preference action commenced by the trustee under 11 U.S.C. § 547(b). *See* Ruling on Renewed Motion at 1–2.

After a hearing held on January 14, 1993, and on the record then before the court, Judge Conrad concluded:

> The earmarking doctrine is a valid defense to a preference action commenced under 11 USC § 547(b) if the debtor maintains no actual or meaningful control over the new creditor's funds and the transaction does not deplete the estate. A factual dispute exists concerning Debtor's control of the Kelton Loan. Summary judgment is therefore denied concerning the Kelton Loan. If the transaction is otherwise proven to meet the requirements of earmarking, Trustee may recover as preference from Bank of Vermont the value of the collateral pledged to and liquidated by Lyndonville in exchange for the Kelton Loan. The value of the collateral will be determined in a separate hearing, if necessary.
>
> Partial summary judgment is granted in favor of Trustee concerning the Jasmin Loan. The Jasmin Loan proceeds were clearly within the control of the Debtor and therefore the earmarking defense does not apply.

Ruling on Renewed Motion at 29–30.

On March 16, 1994, the Bankruptcy Court held an evidentiary hearing on the issue of the allocation of collateral securing the Kel-

ton Loan. *See* Memorandum of Decision on Value of New Security Refinancing Unsecured Debt (Record at 45) (hereinafter "Ruling on Unsecured Debt") at p. 3. The court opined:

> Our findings of fact on the appropriate allocation of collateral to loans is set forth in the table appended to this Memorandum. Based on those finds, we hold that the Kelton Loan was oversecured, because a total of $1,998,169.27 in collateral value was available to pay off the $1,758,402.61 balance, leaving a collateral surplus of $239,766.66. It is thus apparent that the involuntary, unsecured debt from Debtor to Bank was replaced by debt to Lyndonville that was oversecured. Accordingly, we find that the affirmative defens[ ]e of earmarking is unavailable to Bank with respect to the Kelton Loan.

Ruling on Unsecured Debt at 11.

Having thoroughly examined issues relating to the earmarking defense, the Bankruptcy Court was still required to determine whether the money paid to Bank of Vermont was property of the debtor and therefore potentially a fraudulent or preferential transfer. The court held the trial on that issue on January 19 and 20, 1995. *See* Transcript of January 20, 1995 Hearing (Record at 56) (hereinafter "Trial Transcript"). At the completion of testimony, Judge Conrad summarized the evidence as follows:

> An interest in property isn't a plain meaning phrase. State law governs the interest in property. The Trustee here has failed to show, and this is one of the elements of a preference, that the debtor had an interest in the property that State Law could enforce. I think if we were outside of bankruptcy—Let's assume we were not here and preference wasn't even the issue, if Charlie Kelton had walked off with the check, and I think that was the information that Andy Field was making, that he was never going to let Mr. Kelton walk away with those checks. The debtor would not have been allowed to take the money and run or go off in one of those trucks. The Trustee has not proven to my satisfaction today that the Debtor had the right to spend the money any way that Debtor

wanted it; therefore, on that basis the Trustee has failed to prove that there's an interest in property.

Trial Transcript at 213–14. As an alternative ground, Judge Conrad found that the entire loan was earmarked because Lyndonville Savings Bank retained control over the disbursement of funds. Trial Transcript at 218. Accordingly, Judge Conrad entered judgment in favor of the Bank of Vermont.

## II. Discussion

■ Under either 11 U.S.C. § 547(b) and 11 U.S.C. § 548(a), a trustee who wishes to avoid a transfer must demonstrate that it involved the "an interest of the debtor in [the] property." Stripped of extraneous arguments, the dispositive issue here is whether the trustee proved that the debtor had a sufficiently personal and enforceable interest in the funds at issue. After conducting a hearing and reviewing the submissions of the parties, Judge Conrad determined that, under these circumstances, the Kelton and Jasmin Loans cannot be considered property of the debtor subject to inclusion in the debtor's estate. His conclusion is supported by the record and by applicable law.

■ "Because the purpose of the avoidance provision is to preserve the property includable within the bankruptcy estate—the property available for distribution to creditors—'property of the debtor' subject to the preferential transfer provision is best understood as that property that would have been part of the estate had it not been transferred before the commencement of bankruptcy proceedings." *Begier v. I.R.S.*, 496 U.S. 53, 58, 110 S.Ct. 2258, 2263, 110 L.Ed.2d 46 (1990). Generally, the definition of "an interest in property" is a matter of state law. *See, e.g., Matter of Smith*, 966 F.2d 1527, 1530 (7th Cir.), *cert. dismissed*, —— U.S. ——, 113 S.Ct. 683, 121 L.Ed.2d 604 (1992).

■ In Vermont, unhindered possession of a particular item, accompanied by use of the item as one's own, provides evidence that the item is, in fact, his "property." *See Damon v. Secretary of H.E.W.*, 557 F.2d 31, 34 (2d Cir.1977); *see also Miller v. Merchants Bank*, 138 Vt. 235, 415 A.2d 196, 199 (1980)

("[B]ecause plaintiff does not have possession or a right to possession which she can translate into actual possession, she cannot enforce any rights under the certificates....");  *cf. Lyon v. Bennington College Corp.*, 137 Vt. 135, 400 A.2d 1010, 1012 (1979) ("Tenure" is not a "property interest" subject to conversion.) The facts in the instant case lead ineluctably to the conclusion that the debtor never possessed and was able to freely use the funds from the two loans at issue as it saw fit. Accordingly, the trustee did not meet his burden of demonstrating the debtor's interest in these funds.

The trustee has made much of a perceived inconsistency between the Bankruptcy Court's ultimate conclusion after a trial on the merits and the court's preliminary findings that the earmarking defense did not apply to these loans. Given this Court's affirmance of the decision on whether the trustee adequately demonstrated an interest of the debtor in the loans, Judge Conrad's findings on the applicability of the earmarking defense are not dispositive of this appeal. However, the Court notes that his preliminary statements regarding earmarking, made in the context of this lengthy proceeding, do not necessarily suggest inconsistency.

 "[T]here is an important exception to the general rule that the use of borrowed funds to discharge the debt constitutes a transfer of property of the debtor: where the borrowed funds have been specifically earmarked by the lender for payment to a designated creditor, there is held to be no transfer of property of the debtor even if the funds pass through the debtor's hands in getting to the selected creditor." *See In re Montgomery*, 983 F.2d 1389, 1395 (6th Cir.1993). Prior to trial, Judge Conrad, on the record then before him, addressed the potential applicability of the earmarking defense. He was not addressing whether the trustee had met his ultimate burden of proving that the loans, in fact, were property of the estate. Moreover, as Judge Conrad made clear, his examination of the complete record demonstrated that, while the Jasmins and Keltons may have relinquished their control of the loans, Lyndonville Savings Bank did not. *See* Hearing Transcript at 210 ("So even though

the Jasmins said that Carl Kelton or Charlie Kelton, whichever you want to call him, said he could do with it as he wanted, the Bank that was dispersing the funds would not be allowing Charles Kelton to do anything with those funds other than pay off the Bank of Vermont.") Lyndonville Savings Bank's control over disposition of the funds supports the applicability of the earmarking defense. *See Coral Petroleum, Inc. v. Banque Paribas–London*, 797 F.2d 1351, 1361 (5th Cir. 1986). In this particular case, it certainly implicates the lack of debtor's interest in the property found by the Bankruptcy Court. *See Matter of Smith*, 966 F.2d at 1531 ("The real question here is whether the Debtor was actually able to exercise sufficient dominion and control over the funds to demonstrate an interest in property.")

The judgment of the Bankruptcy Court is AFFIRMED.

SO ORDERED.